Delaware County
The Grantor Has Complied With
Section 319.202 Of The R.C.
DATE _____ Transfer Tax Paid _1,335.00_
TRANSFERRED OR TRANSFER NOT NECESSARY
Delaware County Auditor By _____

*EXHIBIT A*

Doc ID: 011127150002 Type: OFF
Kind: DEED
Recorded: 06/30/2016 at 11:58:18
Fee Amt: $28.00 Page 1 of 2
Workflow# 0000120823-0002
Delaware County, OH
Melissa Jordan County Recorder
File# 2016-00018551
BK 1432 PG 806-807

JOSEPH SUAREZ
7840 OVERLAND TRL
DELAWARE, OH 43015-7038

DESCRIPTION APPROVED
FOR TRANSFER
Chris Bauserman
Delaware County Engineer

## GENERAL WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS THAT STEPHEN SONGSHENG CHEN and YUYING MENG, husband and wife, by DAVID WEI CHEN, their Attorney-in-Fact based on the Limited Power of Attorney dated July 15, 2015 (collectively "Grantor"), for valuable consideration paid, grant, with general warranty covenants, to JOSEPH W. SUAREZ, an unmarried man, ("Grantee"), whose tax mailing address is C/O PNC MORTGAGE, 3232 NEWARK DRIVE, MIAMISBURG, OHIO 45342, the following real property:

Situated in the State of Ohio, County of Delaware and in the Township of Orange and bounded and described as follows:

Being Lot Number Five Thousand Five Hundred Forty-six (5546), in North Orange Section 3, Phase 1, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Cabinet 2, Slides 754, 754A, 754B, and 754C, Recorder's Office, Delaware County, Ohio.

PARCEL #:                        318-233-05-012-000
Prior Instrument Reference:      Volume 0860, Page 0648 of the Deed Records of
                                 Delaware County, Ohio
Property Address:                7840 Overland Trail, Delaware, OH 43015

TO HAVE AND TO HOLD the above premises, with the appurtenances thereunto belonging, unto the said Grantee, his successors and assigns forever.

AND THE SAID GRANTOR, for themselves and their heirs and assigns, hereby covenants with the said Grantee, his successors and assigns, that said Grantor is well seized of the same in FEE SIMPLE, and has good right and full power to bargain, sell and convey the same in the manner of aforesaid, and that the same is free from all encumbrances whatsoever, except restrictions, conditions, reservations, and easements of record, zoning ordinances, if any, and taxes and assessments prorated to the date of transfer, and they will Warrant and Defend said premises, with the appurtenances thereunto belonging, to the said Grantee, his successors and assigns, against all lawful claims and demands whatsoever.

The Grantor has hereunto executed this deed this **14** day of
_____, 2016.

*Stephen Songsheng Chen, by David Wei Chen,*
*his Attorney-in-Fact*

_____
**STEPHEN SONGSHENG CHEN, by DAVID WEI
CHEN, his Attorney-in-Fact**

*Yuying Meng, by David Wei Chen,*
*her Attorney-in-Fact.*

_____
**YUYING MENG, by DAVID WEI CHEN,
her Attorney-in-Fact**

**STATE OF OHIO**          )
                          )ss
_____ **COUNTY**        )

BEFORE ME a notary public in and for said county and state, personally
appeared the above-named **STEPHEN SONGSHENG CHEN and YUYING MENG,
husband and wife, by DAVID WEI CHEN, their Attorney-in-Fact based on the
Limited Power of Attorney dated July 15, 2015**, who acknowledged he did sign the
foregoing instrument and that the same is his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal, this
___ day of _____, 2016.

_____
**LACY JUDGE**
Notary Public, State of Ohio
My Commission Expires January 20, 2020

Instrument Prepared By:        Emily Owens Law, LLC
                              Emily Owens, Esq.
                              2409 Bristol Rd., Columbus, OH 43221

ᴵᵁᴸ Ụ ∠ ⅠⅠ  ᴾᴬᴳᴱ Ụ 2 Ọ Ⅰ

EXHIBIT B



# DECLARATION OF COVENANTS, EASEMENTS, RESTRICTIONS AND ASSESSMENT LIENS FOR NORTH ORANGE RESIDENTIAL SUBDIVISION

This is a declaration of covenants, easements, restrictions and assessment liens made this *14th* day of *June*, 2002 by North Orange Land, LLC, an Ohio limited liability company (hereinafter referred to as "Declarant").

## Background

A.    Declarant is the owner in fee simple of certain real estate more particularly described on the attached Exhibit "A" which is incorporated herein by reference, situated in the Township of Orange, County of Delaware and State of Ohio and

> Being Lots 5470 and 5471 of Section 2, Phase 1 of North Orange Subdivision, as the same are numbered and delineated upon the recorded plat thereof, of record in Cabinet 2 , Slide 752 , Recorder's Office, Delaware County, Ohio (the "Section 2, Phase 1 Plat") and Lots 5526 through 5573, inclusive, of Section 3, Phase 1 of North Orange Subdivision, as the same are numbered and delineated upon the recorded plat thereof, of record in Cabinet 2., Slides 754, 754A, 754B, and 754C, Recorder's Office, Delaware County, Ohio (the "Section 3, Phase 1 Plat").

B.    Declarant intends during the course of development of the real estate described in Paragraph A, which is hereafter referred to as North Orange Subdivision to construct and develop certain Common Improvements for the benefit of Declarant as well as owners of all of the Lots (defined below) in North Orange Subdivision.

C.    Declarant desires to create a plan of restrictions, easements and covenants concerning the Lots in North Orange Subdivision and to retain in Declarant plan approval of the dwelling units and other Improvements (defined below) to be constructed on the Lots in North Orange Subdivision and the easements and covenants shall also relate to overall development for the benefit of and to

protect the interest of the public, Declarant, each Lot Owner, and their respective heirs, successors and assigns.

## COVENANTS, EASEMENTS, RESTRICTIONS
## AND ASSESSMENT LIENS

NOW, THEREFORE, Declarant hereby declares that the Lots (as defined below) shall be held, sold, conveyed and occupied subject to the following covenants, easements, and restrictions which are for the purpose of protecting the values and desirability of, and which shall run with the title to, the land and each part thereof, and be binding on all parties having any right, title or interest in the land and each part thereof, and their respective heirs, successors and assigns, and shall inure to the benefit of and be enforceable by Declarant, its successors and assigns, the Trustees of Orange Township, each Lot Owner in the Subdivision (defined below), the respective heirs, successors and assigns of each Lot Owner, and the North Orange Homeowners' Association, an Ohio not-for-profit corporation, whose members shall be all Lot Owners of the Subdivision formed to maintain and administer certain Common Improvements which have been, or will be, transferred to them by Declarant, its successors and assigns, and administer and enforce the covenants created hereunder.

## ARTICLE I
## DEFINITIONS

As used herein, the following terms shall have the following definitions:

Section 1.     "Association" shall mean North Orange Homeowners' Association, an Ohio not-for-profit corporation, its successors and assigns.

Section 2.     "Common Area" shall mean all real property, now or hereafter acquired by Declarant or Association for the common use and enjoyment of all Lot Owners.

Section 3.     "Common Improvements" shall mean those areas owned by the Association, or designated by the Developer, which the Association and its respective Lot Owners are required to construct, maintain and administer, including private streets, fences, landscaped and preservation areas, street islands, entrance walls, gate houses, bicycle and walking paths, common open spaces,

VUL U 2 1 1  PAut U 2 U 3

streams, ponds, and other improvements owned, maintained or administered by the Association or which are designated by the Developer or government authorities as the responsibility of the Association, or Lot Owners.

Section 4.    **"Declarant" or "Developer"** shall mean North Orange Land, LLC, its successors and assigns.

Section 5.    **"Improvement"** shall mean any change of any kind in any Lot or Common Area and anything located thereon.

Section 6.    **"Lot"** shall mean any Lot described in Background Paragraph A, together with any lot subsequently added to the Subdivision in accordance with the provision of Article V, Section 8 hereof.

Section 7.    **"Owner" or "Lot Owner"** shall mean the holder of record title to the fee simple interest in any Lot, whether or not such title holder actually resides on or in any part of the Subdivision, his or her heirs, successors and assigns.

Section 8.    **"Plat"** shall mean the Section 2, Phase 1 Plat, the Section 3, Phase 1 Plat and any other recorded plat for such area as may be subsequently added to the Subdivision in accordance with the provision of Article V, Section 8 hereof.

Section 9.    **"Restrictions"** shall mean these covenants, restrictions, conditions and assessments together with all of the provisions contained herein as they now appear or as they may hereafter be amended.

Section 10.    **"Subdivision"** shall mean North Orange Subdivision in Orange Township, Delaware County, Ohio, and such additional areas as may be added in accordance with Article V, Section 8 hereof.

## ARTICLE II
## ARCHITECTURAL CONTROL

Section 1.    **Approval Required**.  No Improvements or change of any kind, including without limitation any:

(a)    building, construction, placement of or addition to or alteration of any structure (whether temporary or permanent);

(b)    changes in color, material finish, or appearance of any improvement;

(c)    excavation, alteration of grade;

(d)    landscaping, tree or shrubbery removal or plantings, or landscaping plan;

(e)    construction, placement of or addition to or alteration of any:

   i.    fencing, walls, screening;

   ii.    walkways, driveways, parking area;

   iii.    patio, deck, porch;

   iv.    swimming pool, hot tub, spa;

   v.    children's recreational equipment or structures (including treehouses, playhouses, basketball hoops, and playground equipment);

   vi.    tennis court or other athletic facility;  or

   vii.    flag pole, exterior lighting, ornamentation, or sign;  or

(f)    any other change which in any way alters the exterior appearance of the Lot from its theretofore natural or improved

state, including a change, alteration or other modification of
any of the foregoing previously approved hereunder

shall be commenced or permitted to remain on any Lot or Common Area unless such Improvement
or change has the prior written approval of the Developer.  No excavation shall be made, no
construction begun and no materials shall be stored on the Lot until receipt of written approval from
the Developer.

Section 2.     **Method to Request Approval**.  All approvals shall be requested by
submission to the Developer of one copy of the plans and specifications, showing the following:

    (a)    The arrangement of the exterior of the residential structure including:

        (i)    color and texture of building materials;

        (ii)    type and character of all windows, doors and exterior lighting
fixtures;

        (iii)    type and character of chimneys;

        (iv)    location of the structure and orientation of the structure to the
topography;

    (b)    Existing and proposed land contours and grades;

    (c)    All buildings and other Improvements including walkways, access drives and
parking areas, and other improved areas, and the locations thereof on the site,
existing or proposed;

    (d)    All landscaping, including existing and proposed tree locations and
planting areas, mail box locations, and exterior ornamentation;

    (e)    Exterior lighting plans;

(f)     Plans and specifications for all outdoor recreational and play areas, including swimming pools, childrens recreational equipment or structures, spa, tennis courts, or other athletic facilities;

(g)     Plans and specifications for walls, fencing, and screening;

(h)     Plans and specifications for patios, decks, and porches or any other exterior changes or Improvements; and

(i)     Such additional information, data, specifications and drawings as may be reasonably requested by the Developer.

Specifications shall describe types of construction and exterior materials to be used, including, without limitation, the colors and manufacturers thereof, and shall otherwise be prepared according to standards established from time to time by the Developer.

Section 3.     **Basis of Approval**.  Approval shall be based, among other things, upon conformity and harmony of the proposed plans and specifications with the design and quality of the Subdivision, other structures in the Subdivision and neighboring property as to external design, appearance and type of construction, materials, colors, setting, height, grade, finished grade elevation, and landscaping and tree removal;  and conformity of the plans and specifications to the purpose and general intent of this Declaration.

Section 4.     **Building Actions**.  If Developer disapproves the plans and specifications the Owner may revise and resubmit the plans and specifications until approval is received.  The actions of the Developer through its approval or disapproval of plans and other information submitted pursuant hereto, shall be conclusive and binding.

Section 5.     **No Liability**.  Neither the Developer nor any agent or employee, nor any of their respective heirs, personal representatives, successors or assigns, shall  be liable to anyone by reason of any mistake in judgment, negligence, nonfeasance or misfeasance arising out of or relating to the approval or disapproval or failure to approve any plans so submitted, nor shall they, or any of

them, be responsible or liable for any structural defects in such plans or in any building or structure erected according to such plans or any drainage problems resulting therefrom or any other effect on other Lots and Owners in the Subdivision or elsewhere. Every person and entity who submits plans to the Developer agrees, by submission of such plans, that he or it will not bring any action or suit against the Developer to recover any damages or to require the Developer to take, or refrain from taking, any action whatever in regard to such plans or in regard to any building or structure erected in accordance with these restrictions.

Section 6.    **No Reliance**. No Lot Owner may rely upon the submission and/or approval of any such plans or the buildings or structures described therein, or upon the Developer, to maintain the quality of, or a design plan for, the Subdivision.

Section 7.    **Requirement of Completion; Notice of Completion, Non-completion or Non-compliance**. An Owner shall cause any Improvement to be diligently pursued to completion within eighteen (18) months after the date construction is commenced. Any Improvement which has been partially or totally destroyed by fire or otherwise shall be repaired or removed within three (3) months after the time of such destruction. Upon the completion of any Improvement, the Owner may file with the Developer a notice of completion and compliance which shall give rise to a conclusive presumption in favor of the Owner that the Improvement is completed and in compliance with all provisions of this Article II, unless within thirty (30) days of the filing the Developer gives actual notice of non-compliance or non-completion. Notice of non-compliance or non-completion will be considered to be delivered when it is posted on or about the Improvements in question or delivered by certified mail or in person to the Owner.

### ARTICLE III
### GENERAL PROVISIONS

Section 1.    **Residential Purposes**. Except as otherwise stated herein, all Lots shall be used for single-family residential purposes. No single-family residence shall be constructed upon any Lot which is less than (a) 2,000 square feet for single-story units and (b) 2,200 square feet for two-story units. No Improvement shall exceed thirty-five (35) feet in height.

C:\WINDOWS\Temporary Internet Files\OLK178\CCR VERSION3.doc    (7)
06/14/02

ᵘᴸ U ᴢ I I  ᶠᴬᵁᴸ U ᴢ U ᵟ

Section 2.     **Trade or Commercial Activity Barred**.  No trade or commercial activity shall be conducted upon any Lot, nor shall anything be done thereon which may become an annoyance or nuisance to any Owner of any Lot in the Subdivision.

Section 3.     **Maintenance of Lots and Improvements**.  The Lots, including any land which has been altered from its natural state existing at the time of this Declaration, shall be landscaped according to plans approved in writing by the Developer. All shrubs, trees, grass and plantings of every kind shall be kept well maintained, properly mowed, weeded, cultivated and free of trash and other unsightly material. Landscaping approved by the Developer shall be installed no later than one hundred twenty (120) days following occupancy of, or completion of, any building/Improvement, whichever occurs first. The Lot shall be regularly mowed, weeded and fertilized in a manner consistent with best horticultural practices for a residential subdivision within the central Ohio area and no Lot shall be allowed to become overgrown or unsightly. No vegetable or other produce garden may be located so as to be visible from outside the Lot. All Improvements shall at all times be kept in good condition and repair and adequately painted or otherwise finished in accordance with specifications established by the Developer.

Section 4.     **Site Placement**.  All buildings and other Improvements shall be placed so that the existing topography and landscape shall be disturbed as little as possible, and so that the maximum number of desirable trees and other natural features will be preserved, unless the Developer approves in writing some other placement.

Section 5.     **Exterior Materials and Colors**.  Finish building materials shall be applied to all sides of the exteriors of buildings.  Colors and building materials shall be harmonious and compatible with colors of the natural surrounding and adjacent buildings and Improvements. The Developer shall have the sole right to approve or disapprove materials and colors so controlled. Each home exterior finish shall utilize natural finishes such as: stone, stucco, brick, wood, cultured stone and eifs or cementitious siding. Aluminum and/or vinyl siding shall be used for trim details only such as soffits, gutters, shutters, etc. but shall not be used as a siding products.  Under no circumstance shall any home exterior finish product contain high gloss or high chroma colors.

Section 6.    **Garage**.  No dwelling may be constructed on any Lot unless an attached enclosed garage with paneled garage door for at least two automobiles is also constructed thereon.

Section 7.    **Intentionally Deleted**.

Section 8.    **Service Screening, Storage Areas**.  All garbage, trash and other waste shall be placed in containers which shall be concealed and contained within buildings, or shall be concealed by means of a screening wall of material similar to and compatible with that of the building on the Lot, or shall be concealed by sufficient landscaping to provide a permanent screen at all times of the year.  These elements shall be integrated with the building plan, designed so as not to attract attention, and shall be located in as reasonably inconspicuous a manner as possible.  Unless specifically approved by the Developer, no materials, supplies or equipment shall be stored on the Lot except inside a closed building, or behind a visual barrier screening such areas so that they are not visible from neighboring streets or properties.

Section 9.    **Drives, Curbs and Walks**.  Drives, curbs, parking areas and walks shall be constructed or altered only in accordance with plans and specifications submitted to and approved in writing by the Developer and otherwise consistent with the applicable zoning text.

Section 10.    **Storage Tanks**.  No storage tanks, including, but not limited to, those used for storage of water, gasoline, oil, other liquid or any gas, shall be permitted on a Lot outside a building except as approved in writing by the Developer.

Section 11.    **Building Exterior**.  All windows, porches, balconies and the exterior of buildings shall at all times be maintained in a neat and orderly manner.  Draperies and other window treatment shall be harmonious with the outside of each building.  No clothing or any other household fabrics shall be hung in the open on any Lot and no clotheslines or other outside drying or airing facilities shall be permitted.

Section 12.    **Removal of Trees**.  In order that the natural beauty of the Subdivision may be preserved, no living tree having a caliper measurement or diameter of six (6) inches or more shall be destroyed or removed from a Lot, unless specifically approved by the Developer.  In the event

of a violation of this paragraph, Developer may, at its option, cause any tree so removed or destroyed to be replaced with another tree and the Owner of the Lot on which the tree was located shall reimburse Developer for all expenses incurred by it; provided, however, that with respect to the replacement of a tree, there shall be no obligation of reimbursement in any amount in excess of the expenses which would be incurred if the destroyed or removed tree were replaced with a tree similar in type and size.

Section 13.   **Pools and Hot Tubs**.  No above ground pool which requires a filtration system or is more than six (6) feet in diameter and 18 inches deep shall be placed or maintained on any Lot. No other swimming pool, hot tub or spa may be placed or maintained on any Lot without the prior written approval of the Developer.

Section 14.   **Playground Equipment/Tennis Courts**.  No playground equipment or tennis or similar court shall be placed or maintained on any Lot without the prior written approval of the Developer.

Section 15.   **Fencing**.  Fencing is permitted immediately around a patio, pool or similar Improvement provided it is approved in writing by the Developer. The location of any other fencing must be approved by the Developer in writing.

Section 16.   **Mailboxes**.  All mailboxes in the Subdivision shall be selected by the Developer, who shall also prescribe the location and installation of the boxes. Owners shall purchase and maintain the required boxes.

Section 17.   **Exterior Lighting**.  Only exterior lighting which has the prior written approval of the Developer may be installed on a Lot.

Section 18.   **Hobbies**.  Hobbies or activities that tend to detract from the aesthetic character of the Lot, and Improvements used in connection with such hobbies or activities, shall not be permitted unless carried out or conducted within a building and not visible from either the street or adjoining property. This section includes, but is not limited to, such activities as automotive and boat repair, and sports activities.

:UL U 2 1 1  PAGE 0 2 1 1

Section 19.   **Temporary Residences**.  No structure of a temporary character, trailer, boat trailer, truck, commercial vehicle, recreational vehicle (RV), camper shell, all terrain vehicle (ATV), camper or camping trailer, basement, tent, shack, garage, barn or other outbuilding shall be used as a residence on any Lot either temporarily or permanently.

Section 20.   **Mineral Exploration**.  The Lot shall not be used in any manner to explore for, use, or  commercially exploit any water, oil or other hydrocarbons, minerals of any kind, gravel, earth, soil, or any other substance located in or under the ground. In particular, no wells may be located on the Lot and no water may be removed from any pond, lake, or other body of water located on, adjacent to, or near the Lot.

Section 21.   **Machinery and Equipment**.  No commercial machinery or equipment of any kind shall be placed, operated or maintained upon the Lot except such machinery or equipment reasonably necessary for use in connection with maintenance or construction of Improvements as approved by the Developer.

Section 22.   **Signs**.  Except for traffic signs installed by Declarant or governmental authority, no signs of any kind shall be displayed on any Lot, except one temporary sign of not more than two feet by two feet (2' x 2') advertising the property for sale or rent, or used by the builder to advertise the property during the construction sales period, or signs the restriction of which is prohibited by law.

Section 23.   **Antennas and Satellite Dishes**.  No television or radio antennas or satellite dishes may be installed on the exterior of any house or Lot, except that dishes that do not exceed one meter in diameter and television antennas are permitted if they are located, if possible, in a place not visible from the street, are of a color that blends with the background, and are screened by landscaping or other means so that it is difficult to see them from other lots.  Such location and appearance must be approved by Declarant; provided, however, that the location must be such that it does not interfere with reception.  No towers of any kind, including but not limited to, television, radio and/or microwave towers, shall be erected, placed, or maintained anywhere in the Subdivision.

VOL 0 2 1 1  PAGE 0 2 1 2

Section 24.    Solar Panels.  No solar panels, attached or detached, shall be permitted on any Lot.

Section 25.    Nuisances.  No noxious or offensive activity shall be carried on upon any Lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighboring property.  Without limiting any of the foregoing, no exterior lights, the principal beam of which shines upon portions of a Lot other than the Lot upon which they are located, or which otherwise cause unreasonable interference with the use and enjoyment of another Lot by the occupants thereof and no speakers, horns, whistles, bells or other sound devices which can be heard off the Lot, shall be located, used or placed on a Lot, except security devices used exclusively for security purposes which are activated only in emergency situations or for testing thereof.

Section 26.    Temporary Improvements.  No temporary building or structures shall be permitted on any Lot;  provided, however, trailers, temporary buildings, barricades and the like shall be permitted during construction of initial Improvements on a Lot, provided the design, appearance, and location has the prior written approval of the Developer.  Such Improvements shall be removed not later than fourteen (14) days after the date of completion of the Improvements for which the temporary structure was used. and shall be permitted to remain for no longer than one (1) year, unless a greater period is approved in writing by the Developer.

Section 27.    Animals.  No animals, birds, insects, livestock, or poultry of any kind shall be raised, bred or kept on any Lot, except dogs, cats, or other household pets which are kept for domestic purposes only, and are not kept, bred or maintained for any commercial purpose.  No more than two dogs or two cats or two other pets which are permitted outdoors may be kept on any Lot except when animals in excess of such numbers are less than three months old.

Section 28.    Vehicle Parking and Storage.  No automobile, trailer, boat, camper, recreational vehicle, commercial vehicle, or other motor driven vehicle shall be parked or stored on any Lot unless it is in a garage, except that:

iUL 0 2 1 1  PAGE 0 2 1 3

(a)    such vehicles. if operable, may be parked outside the garage for an occasional, nonrecurring, temporary period not to exceed 72 hours in any thirty (30) days; and

(b)    automobiles in good condition may be parked outside the garage on a regular basis if there is insufficient space in the garage and the automobiles are driven regularly by a person residing on the Lot.

No on-street parking will be permitted on any street that has less than twenty-seven (27) feet of pavement width. Streets having twenty-seven (27) feet to thirty-five (35) feet of pavement width shall be limited to one side of street. "No Parking" signs will be erected on the same side of the street as the fire hydrants. No parking will be permitted on cul-de-sac bulbs. Approved "No Parking" signs will be installed upon completion of the street.

Section 29.    **Lot Split**. No Lot shall be split, divided, or subdivided for sale, resale, gift, transfer, or otherwise, so as to create a new building lot.

Section 30.    **Contiguous Lots**. An Owner may use more than one Lot as a site for a single dwelling unit only if the Owner obtains the prior written permission of the Developer.

Section 31.    **Utility and Drainage Easements**. Location of easements for the installation of utilities and for surface drainage are reserved as shown on the Plat. No lines, wires or other devices for communication purposes, including telephone, television, data and radio signals, or for transmission of electric current or energy, shall be constructed, placed or maintained anywhere in or upon the Subdivision unless they are placed and maintained underground or concealed in, under or on buildings or other Improvements; provided that above-ground electrical transformers and other equipment may be permitted if properly screened with the prior written approval of the Developer. All gas, water, sewer, oil and other pipes for gas or liquid transmission shall be placed underground or within or under buildings or other Improvements. Nothing herein shall be deemed to forbid the erection and use of temporary power or telephone service incident to the construction of Improvements.

VOL 0 2 1 1  PAGE 0 2 1 4

Section 32.   Use of Other Easements.  In addition to the utility easements herein designated, easements in any public or private streets are hereby reserved and granted to the Developer, and any utility company or governmental unit engaged in supplying one or more utility services to the Subdivision to install, lay, erect, construct, renew, operate, repair, replace, maintain or remove all and every type of gas, water, sanitary or storm sewer or other utility facilities.

Section 33.   Drainage and Grading.  No drainage ditches, cuts, swales, streams, impoundments, ponds, or lakes;  no mounds, knobs, dams or hills, and no other physical improvements or elements of the landscape or terrain which control or determine the location or flow of surface water and drainage patterns may be destroyed, altered or modified without the prior written approval of the Developer. No Improvements to a Lot shall be made in any manner whatsoever that are inconsistent with the master grading plans established by the Developer for the Lots, as the plans now exist or may hereafter be modified from time to time, without the prior written approval of the Developer. All Lot Owners shall obtain certification from a licensed engineer after completing any Improvement that the master grading plans have been observed.  Whenever, because of construction of Improvements on a Lot, or for some other reason, silt runs off of the Lot onto any adjacent property, the Owner of the Lot shall be obligated to provide a means of siltation control to prevent such run off.  Roof drains, foundation drains, and other clean water connections to the sanitary sewer system are prohibited.

Section 34.   Lakes and Ponds.  No Owner, or any other person, shall have access to, or the right to use, any lake, pond, stream or other body of water in or adjacent to the Subdivision for boating, swimming or fishing.  Nothing herein shall prohibit any Owner from using common open space for hiking or other limited recreational purposes.

Section 35.   Open Space and No Build Zones.  No building, structure, fence, patio, recreational or athletic facility, or any other improvements of any kind may be placed temporarily or permanently upon, in or under the area designated as Open Space or No Build Zones on the Plat, nor shall any work be performed thereon which would alter the natural state of the zone or damage any of the trees or vegetation therein; provided, however, that the zone may be disturbed to the extent necessary for installation and maintenance of utilities and drainage facilities, detention ponds,

YUL 0 2 1 1  PAGE 0 2 1 5

walkways and/or bicycle paths approved by Declarant.  Any part of the Open Space or No Build Zones disturbed by maintenance shall be restored as nearly as practicable to the original condition. Otherwise, no trees or other vegetation may be removed from the Open Space or No Build Zones except for the removal of dead, diseased, decayed, or noxious trees and other vegetation or as may be required for conservation or aesthetic purposes or in keeping with good forest management practices. Nothing may be planted in the zone except vegetation and trees native to the area.  No earth, rock, sand, gravel or other natural materials may be removed from or placed in the Open Space or No Build Zones nor may any trash or debris, whether natural or man-made, be placed in the Open Space or No Build Zones.

Prior approval of the Developer is required for planting or restoration or the removal of trees or vegetation for conservation, aesthetic or forest management purposes.  Any area where trees or vegetation are removed without Developer's prior approval shall be restored as nearly as practicable to its original condition at the Owner's cost.

The maintenance of Open Space and No Build Zones shall be the responsibility of the Association.

The following restrictions shall apply to all Open Space and No Build Zones depicted on the Plat:

(a)  the Open Space and No Build Zones shown on the Plat shall run with the land in perpetuity so that said Open Space and No Build Zones shall forever be restricted from development with buildings, structures and uses, and it is the intent and purpose of the Open Space and No Build Zones to restrict and forbid any activity or use which would, as a natural consequence of such, impede or make more difficult the accomplishment of the purpose of which the Open Space and No Build Zones was created, as outlined herein.

(b)  No dumping or burning of refuse shall be permitted in the Open Space and No Build Zones.

VOL 0 2 1 1   PAGE 0 2 1 6

(c)  No hunting or trapping shall be permitted in the Open Space and No Build Zones.

(d)  The natural resources of the Open Space and No Build Zones shall remain undisturbed and no top soil, sand, gravel, rock or mineral shall be excavated or removed therefrom, and nothing shall be permitted to occur on the premises which would contribute to the erosion of the land and no trees shall be cut or removed, except for removal of such dead, diseased or decayed trees or vegetation which may be required for conservation or scenic purposes or for the reasons for public safety.

(e)  No roadway nor any facility of any public utility other than existing roadways and public utility facilities or those outlined on the Plat shall be permitted to be constructed or installed in the premises, and no existing roadway or public utility facility shall be enlarged or extended into the Open Green Space and Open Space/No Build Zones except as permitted by the Plat.

Developer shall be allowed, but not obligated, to prepare, construct and maintain said Open Space and No Build Zones for purposes of, entry features, product development identification and associated landscaping. No private encroachment shall be permitted, such as but not limited to, planting of flowers, shrubs, garden materials, etc., dumping of trash or debris, or the installation of any type of facility or convenience.

Nothing in the foregoing shall interfere with or detract from the use of said premises by Grantor-Owner and their successors-in-interest for all purposes, present and future, not inconsistent with the provisions of the Ohio Revised Code.

Section 36.  **Entrance Walls, Gate House, Fencing, Subdivision Identification Signs, Earthmounds and Landscaping.** The walls, gate house, fencing, subdivision identification signs, earthmounds, electrical facilities, irrigation systems and landscaping placed on any of the Lots, streets, or Common Area in the Subdivision by Developer shall not be removed or changed except by the Developer who shall have the right to enter the Lots to do so.  They shall be maintained in good condition by the Association, or, if not, by the Owners of Lots on which such features are located.

YUL 0 2 1 1  PAGE 0 2 1 1

Section 37.   **Ingress and Egress**. Each Lot Owner and his or her invitees shall have a permanent appurtenance, non-exclusive easement over all public streets and the private streets, if any in the Subdivision for the purpose of vehicular and pedestrian access, ingress and egress to and from his or her Lot.

Section 38.   **Maintenance of Common Improvements**.   The Association shall be responsible for maintaining the Common Improvements, including Common Open Spaces subsequently added to the Subdivision, all common landscaped areas and otherwise any irrigation system on the common spaces and areas, fences, entrance walls, gate house and other Common Improvements designated by the Developer or government authorities or assumed by the Association. The Association shall have an easement over each Lot for the purpose of maintaining and repairing the Common Improvements. The Association shall maintain comprehensive general liability insurance, in an amount of not less than $2,000,000 aggregate and $1,000,000 per occurrence and such other insurance as shall be reasonably required by Developer.

Section 39.   **Governmental Regulations Statement**. Each building site is subject to all present and future, applicable laws, ordinances, rules, regulations and orders of the United States Government, the State of Ohio, Delaware County, Orange Township, and any other political subdivision and any administrative agency of any of the foregoing.  Nothing herein shall be construed as permitting any action or condition prohibited by such applicable laws, ordinances, rules, regulations and orders. In the event of any conflict between any such applicable laws, ordinances, rules, regulations and orders and this Declaration, the most restrictive provision shall govern and control.

## ARTICLE IV
## ASSESSMENTS

Section 1.   **Establishment of Assessment**. For the purpose of providing funds for maintenance and improvement of the Common Improvements and other expenses and costs incurred by the Association including any administrative fee of Developer, the Association shall, on a date selected by the Declarant and prior to January 1 of each calendar year thereafter, determine an

estimated budget for the following calendar year, or in the case of the first year, if only a part of a calendar year, for the remainder of that calendar year, and establish an annual assessment as to each Lot provided, however, that under no circumstances shall Developer be responsible for the payment of any assessment. The total assessment collected for the Lots in the Subdivision must be an amount sufficient to meet the obligations of the Association under this Declaration. These assessments shall be payable in advance in such periodic installments and on such due dates, as the Association from time to time determines, provided, that if any installments of any assessment is not paid within thirty (30) days after it has become due, the Association may, at its option, without notice or demand (i) declare the entire balance of the assessment immediately due and payable; (ii) assess interest on the unpaid balance at the highest rate of interest then permitted by law, or at such lower rate as the Association may from time to time determine, and (iii) assess reasonable, uniform, late fees. There shall be an initial assessment from each Lot Owner at the date of purchase from Developer of $200.00 or such greater amount as shall be determined by the Association.

Section 2.    **Establishment of Lien.** If any Lot Owner (exclusive of Developer) shall fail to pay any installment within thirty (30) days after it is due, the Association shall be entitled to a valid lien for that installment or the unpaid portion of that year's assessment, if the Association so elects, together with interest, late fees and costs, which lien shall be effective from the date that the Association certifies the lien to the Delaware County Recorder. The right to file such lien is subordinate to any liens actually filed.

Section 3.    **Payment by Declarant.** Declarant may elect to pay assessments on any Lot owned by Declarant within the Subdivision or pay any deficit in the operating budget of the Association and have such payment treated as a loan to the Association ("Declarant Loan"). The rate of interest and term of the Declarant Loan shall be set forth on the note evidencing the indebtedness of the Association.

## ARTICLE V
## ENFORCEMENT AND MISCELLANEOUS

Section 1.    **Enforcement.** Except as hereinafter provided, Developer, the governmental units in which the Subdivision is located, each Lot Owner, the Association, where applicable, jointly

and severally, shall have the right to enforce, by proceedings at law or, in equity, all restrictions, conditions, covenants, reservations, and charges now or hereafter imposed by the provisions of this Declaration. Notwithstanding the foregoing, in the event of any dispute between Lot Owners or between the Association and any Lot Owner or Owners not including the Developer, as to any matter provided for herein, other than with regard to the obligation for, levy, collection or enforcement, of assessments (including, without limiting the generality of the foregoing, the creation, filing and enforcement of liens), the matter shall be submitted to a single independent arbitrator selected by the Association, as the case may be, who shall decide the dispute in accordance with and pursuant to the arbitration laws of Ohio and the arbitrator's decision shall be final and enforceable as provided above.

Section 2.    **Special Assessment Lien**.  Each Lot Owner shall comply, or cause compliance, with all covenants, requirements, and obligations contained herein, and  with all uniform rules and regulations promulgated by the Association.  Upon the failure of a Lot Owner to comply with such covenants, requirements, and obligations, the Association or Developer, in addition to any other enforcement rights they may have hereunder, may take whatever action either deems appropriate to cause compliance, including, but without limitation, entering upon the Lot for repair, maintenance, reconstruction and removal of any Improvements thereon or any other action required to cause compliance with the covenants, requirements and obligations contained herein. All costs incurred by the Association or Developer in causing such compliance, together with the interest at such lawful rate as the Association or Developer may from time to time establish, shall be immediately due and payable from the Lot Owner to the Association or Developer, and the Association or Developer shall be entitled to a valid lien as security for the payment of such costs incurred, and interest, which lien shall be effective from the date that the Association or Developer certified the lien to the Delaware County Recorder.

Section 3.    **Joint and Several Obligations**. Each and every obligation with respect to a Lot hereunder shall be the joint and several personal obligation of each Owner of a fee simple interest in the Lot at the time the obligation arose or thereafter until paid, and any demand or notice hereunder or pursuant hereto to one of such joint Owners shall be deemed given, taken or received by all such joint Owners.

Section 4.   **Severability and Waiver**.  Invalidation of any one of these covenants or restriction by judgment or court order shall in no way effect any other provision which shall remain in full force and effect.  Failure by a benefited party to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 5.   **Amendment**.  The covenants and restrictions of this Declaration shall run with and bind the land for a term of twenty-five years from the date this Declaration is recorded (except that the easements described herein shall be permanent and perpetual), after which time they shall be automatically extended for successive periods of ten (10) years, unless by agreement of the Owners of two-thirds (2/3) or more of the Lots, these covenants and restrictions are sooner terminated.  This Declaration, as it relates to the Subdivision, may be amended by a duly executed and recorded instrument signed by the Owners of no less than two-thirds (2/3) of the Lots in the Subdivision, provided that any such amendment during the first ten (10) years after the date hereof must also be approved by the Developer. Notwithstanding the foregoing, and in addition thereto, the consent of all Lot Owners present, in person or by proxy, who are entitled to vote at a duly called and noticed meeting of the Association, and the written consent of Developer, shall be required for any amendment hereto which effects a change in (i) the method of dividing the assessments, (ii) the method of voting on Association matters, or (iii) the fundamental purposes for which the Association is organized, including in particular, the maintenance and repair of private streets.  A holder or insurer of a first mortgage on any Lot, upon written request shall be entitled to timely written notice of any proposed amendment hereto.

Section 6.   **Transfer to Association**.  At any time Developer no longer wishes to retain the rights granted to it in this Declaration, it may transfer those rights to the Association, and by such transfer this Declaration will be deemed to be amended, so that every reference to "Developer" herein shall be changed to "Association".  The Association must accept such transfer if tendered by the Developer.

Section 7.   **Constructive Notice and Acceptance**.  Every person who now or hereafter owns or acquires any right, title or estate in any portion of the Subdivision is and shall be

7UL 0 2 1 1  PAGE U 2 2 1

conclusively deemed to have consented and agreed to every covenant, condition and restriction contained herein whether or not a reference to this Declaration is contained in the instrument by which such person acquired an interest in a portion of the Subdivision.

Section 8.    **Additions to the Subdivision**.    Upon the execution and delivery by Developer of a Deed or Declaration of Covenants, Easements, Restrictions and Assessment Liens, and the filing of the same with the Recorder of Delaware County, submitting real property to the lien for assessments established by Article IV hereof, the real property described therein shall become a part of the Subdivision as defined in Article I hereof. Such additions may be made and perpetuated without the consent of the Owners.

Section 9.    **Easements**.    All Lot Owners shall grant utility easements to Developer for the purpose of constructing utility lines over or through the Owner's Lot. Owner agrees to execute all appropriate documents to accomplish the foregoing.

# ARTICLE VI
## ACCEPTANCE

Section 1.    **Acceptance**.  By accepting a deed to any of the above described real estate or Lots, an Owner accepts the same subject to the foregoing covenants and agrees for him or herself, his or her heirs, successors and assigns to be bound by each of the covenants.

**IN WITNESS WHEREOF**, the Declarant has caused this instrument to be executed on its behalf on or as of the 14th day of June , 2002.

Signed and acknowledged
in the presence of:

Print Name: Lucre A Ledley

Print Name: Amy L. Cagle

NORTH ORANGE LAND, LLC.

By:    Planned Communities, Inc., Managing
Member

By:    25 SQ

Its:    Pres.

VOL 0 2 1 1  PAGE 0 2 2 2

STATE OF OHIO
County of Franklin    ss:

Before me, the subscriber, a Notary Public in and for said County and State, personally appeared _Jay S. Ortlip_ , the _President_ of Planned Communities, Inc., the Managing Member of North Orange Land, LLC, an Ohio limited liability company who acknowledged the signing of the foregoing instrument to be his free act and deed on behalf of said corporation and limited liability company for the uses and purposes set forth therein.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this _14th_ day of _June_ , 2002.

Notary Public
My Commission Expires _5-15-05_

DEBBIE A. LEDLEY
Notary Public, State of Ohio
My Commission Expires
5-15-2005

EXHIBIT C

9/2/2020



Griswold Delaware

EXHIBIT D

**From:** JOEY SUAREZ
**Sent:** Tuesday, May 01, 2018 4:52 PM
**To:** Nicholas Barnes; Charles Williams; Nicole Wilson
**Subject:** 7840 Overland Trail Delaware Ohio violation

Mr. Barnes,

   I received your letter regarding my retaining walls at 7840 Overland Trail Delaware Ohio 43015.

- Your letter says I was giving 2 violation letters? This is false! I was giving only 1 in July of 2017 I responded by email and summited a new revise plan explaining with my grade in my yard the walls would need to be higher in some areas then others. No response from the HOA saying they approved or disapproved my new layout.
- July of 2017, I offered to meet with the HOA and have them come to my home so I could walk the yard and go over my plans. No response from the HOA
- November of 2017, I met with the president of the HOA and walked the yard with him and told him my plans and he had no issues with my design.
- Spring of 2018 New HOA wanted me to summit a new drawling for my walls and I summited it and no response from the HOA.
- Your letter says I had 30 days to complete my project? I have done all the labor myself and I worked on my project until December 1st, I have put in over 7,000 blocks... this size of a project takes longer then 30days. $8,000 has been invested so far.
- Your Letter says I have violated deed restrictions? That is false! In no way does the North Orange HOA book say anything in the deed restrictions or amendments about retaining walls and how high they can be.
- Your letter says you want it to be put back before construction stated? This house for 10 years before I bought it in 2016 was overgrown with black concrete sidewalks, driveway and black stucco. And the HOA did nothing about it?! Want it back that way?!
- Your letter says you will come onto my property and remove my walls at my expense? You cannot trespass onto my property! This is not a condo! The only way you can enter my yard is if you have a court order to remove it! I know the laws and my rights! You will be held in the court of law for and damages!

Bottom line Mr. Barnes, I bought this house and I put 150k into the interior and planning on spending 20-30k on the outside to make it nicer! I paid 445K for this house Delaware County has me at 510K and a private appraisal has me at 685K I have approved value for North Orange! My walls are not hurting anyone and my project is not finished, I was waiting for it to warm up to start on it again. I will be starting on my project this month in hopes to have the construction 100% finished before June. I gave the HOA multiple times to come out and they did not respond! Not my Fault! I don't want you to ever ever send me a threatening letter like this again! This is not my first rodeo or HOA! I will not tolerate it and if it continues I will counter sue you and the HOA for harassment! Bottom line you and the HOA do not scare me and if you want my walls down it will need to be a court order! Not from you sending me a threatening letter! So bring on the court date Mr. Barnes!! More then likely after my landscaping is done the judge will throw your case out after I show him or her the before and after pictures of my property! My house is not painted hot pink so the courts will rule in my favor! If the HOA wants to meet with me

and "maybe" talk about modifying my walls to make them happy I can do that! Otherwise don't contact me again unless  its with a court date! I will drag it out as long as I can in the court system to drain our HOA with attorney fees! You have yourself a wonderful day Mr. Barnes!

JOEY SUAREZ

EXHIBIT E 

**From:** JOEY SUAREZ
**Sent:** Wednesday, May 02, 2018 3:28 PM
**To:** Nicholas Barnes
**Subject:** Re: 7840 Overland Trail Delaware Ohio violation

See you in court then! Looking foward to it! I will be continuing my project and the board members that lives in my neighborhood have no power. You can relay this message to the members of the board to live my neighborhood tell them I said to go f u c k them selves and if they try to come onto my property and talk to me about it I will punch them straight in the face! I'm telling you to take me to court so stop blowing smoke and trying to scare me because it does not scare me. I'm going to finish my project like I have made myself clear if you want it to stop you need to take me to court! You are only a attorney you are a dime a dozen you are not the law and you cannot tell me to stop without legal action from Delaware County Municipal Court. You have yourself a nice day and you make sure to relay that message to my neighbors! And once again I'm not going to build my walls any bigger I'm fixing settling issues and wiring for my landscape lighting then I'm going to have about 30 yards of dirt hauled in for me to fill my retaining walls up. You attorneys are all the same try to scare scare scare threaten people threaten people and guess what you just found someone who's not scared of you or the HOA

Joey Suarez

---

**From:** Nicholas Barnes <n.barnes@wslawllc.com>
**Sent:** Wednesday, May 2, 2018 3:18:36 PM
**To:** JOEY SUAREZ
**Subject:** RE: 7840 Overland Trail Delaware Ohio violation

Mr. Suarez:

I will relay your e-mail to the Board. The Board, however, has already made its position clear: it did not, and does not, approve of your deviation from the initial plans that you submitted and that it approved.

The Board and I hope to work with you to resolve this matter amicably. Accordingly, please feel free to contact me if you would like to discuss this matter further. If you continue building the retaining wall without the Board's prior approval and despite receiving instructions not to do so, however, the Board will proceed accordingly.

Best regards,

Nick

**NICHOLAS R. BARNES**
WILLIAMS & STROHM, LLC | ATTORNEYS AT LAW

Two Miranova Place | Suite 380 | Columbus, OH 43215
P: (614) 228-0207 | F: (614) 228-6984
Toll Free: 888-228-9682
www.williams-strohm.com

EXHIBIT F

**Nicholas Barnes**

| | |
|---|---|
| **From:** | JOEY SUAREZ <joesuarez28@hotmail.com> |
| **Sent:** | Friday, June 29, 2018 3:50 PM |
| **To:** | Nicholas Barnes |
| **Subject:** | Court |

Thank you so much! I just got the court documents im pretty pumped to take this on and drain the HOA in Attorny fees! I have 28 days to submit all the documents?! Sweet! I dont need that long but i will start working on it next week for you :)! I will summit all the emails where i asked the HOA to come out with no response! Judge is going to love that one! Haha. I have 25 yards of dirt coming this weekend so the project will be done for court! So i will have lots of before and after photos lined up for the judge and you :). Also im bringing photos to court where the HOA is not taking care of other parts of the communuty and other violations! They are wasting all there money and time on me.. i bet the judge will get a kick out of them when he sees them! Well you have a great july 4th!.my dump truck just got here.. need to start on this dirt! Looking foward to meeting and seeing you in court! I love going to court! I get exited! Especially when I know I'm going to win! ;) see you soon!

Joey Suarez

  



Confidentiality Notice

This email transmission contains confidential information belonging to the sender which is legally
privileged. The information is intended only for the use of the individual or entity named above. If you are
not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking
of any action in reliance on the contents of this information is strictly prohibited. If you have received this
email in error, please notify us by telephone 614-228-0207, to arrange for return of the information to us.

**This communication is from a debt collector attempting to collect a debt.  Any information**
**obtained will be used for that purpose.**

---

**From:** JOEY SUAREZ [mailto:joesuarez28@hotmail.com]
**Sent:** Tuesday, July 03, 2018 9:39 AM
**To:** Nicholas Barnes
**Subject:** Re: 7840 Overland Trail

Nick,

      Ok so why im i being sued, when i have asked the association companys to come out 3
times in emails to talk about it and no one responded? Why im i getting sued when multiple
addresses have had retaining walls over a foot tall for years? In June 2017 i had a fight with
board members on North Orange over people speeding in the community and then in July i got
my first violation? I think the board members are bias and only approve what there friends do,
like illegal fences thats in our guidelines. Nothing in are HOA guidelines have any height
restrictions when it comes to a retaining wall. The neighbors in Park Place where i live have no
issues with the landscaping because they looked at a overgrown house for 10 years that the
HOA did not take care of it. Some would like to start a petition against this lawsuit. With the
exterior painting of the house at $7,000 tree removal at $2,000 and landscape blocks, gravel,
pavor base, wiring, lighting  at $15,000  irrigation system $5,000   total outdoor
upgrade  $26,000 to date. Not to mention my interior full remodel of $150,000. I just dont get i
had a dumpster on my driveway for 6 months with no violations,  dirt piles around my house
when the landscaping was removed for 6 months with 0 violations.  But when I actually improve
the outside and have gulf course looking grass i get sued? I think the judge will ask you the
question of why 3 illegal fences have not been sued? Why 13 retaining walls have not been
sued? But like i said there are o restrictions in all 80 pages of the HOA that says anything about
the height of a retaining wall. Its all on the personal opinion. I have lowerd the walls in multiple
locations and you still have not told me what is or is not to tall. At this point its as low as it can
go with the grades in my yard and to keep flower beds level. If i had a 100% flat yard it would
been at 1ft all around. But i have a very sloping yard. I can also have a appraisal done to show
you the value in my home? The author came out and she put me at $508k after seeing the
outside. I paid $445k for the house. I was offered $630k for it this spring from a couple who
seen it on zillow. I have improved the look and value of this community.  You would not believe
the photos i took yesterday.. one house has a car bumper on the driveway, Christmas lights up,
tall grass, tile all over the driveway.

Joey Suarez

EXHIBIT 

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, OHIO

NORTH ORANGE HOMEOWNERS'          :
ASSOCIATION, INC.,
                                  :
          Plaintiff,
                                  :
                                        Case No. 18 CV H 06 0329
     -vs-                         :

JOSEPH W. SUAREZ,                 :

          Defendant.              :

2019 FEB 11  PM 12: 12

CLERK OF COURTS
DELAWARE COUNTY, OHIO
COMMON PLEAS COURT
FILED

## <u>Judgment Entry Granting Plaintiff's Motion for Summary Judgment</u>

This matter is before the Court on Plaintiff North Orange Homeowners'
Association, Inc.'s motion for summary judgment. Defendant Joseph W. Suarez filed a
response, and the Plaintiff filed a reply thereto. For the reasons that follow, the Court
grants the Plaintiff's motion for summary judgment.

Plaintiff North Orange Homeowner's Association ("HOA") governs the lots in the
North Orange Residential Subdivision. (Compl. Ex. 3.) The lots are subject to the
restrictions set forth in the Declaration of Covenants, Easements, Restrictions, and
Assessment Liens for North Orange Residential Subdivision. (Compl. Ex. 2.) Defendant
Joseph W. Suarez is the record owner of Lot 5146 in the subdivision, known as 7840
Overland Trail, Delaware, Ohio 43015. (Compl. Ex. 1; Answer 1.) In early 2017, the
Defendant submitted plans to the HOA to install a one-foot retaining wall around the
lot's flower beds using a particular type and color of paver stone. (Compl. Ex. 4.) The
HOA approved this request. The Defendant then deviated substantially from the plans
by building retaining walls that exceed one foot and extend to areas beyond those

detailed in the request, contain electrical outlets and lines not referenced in the request, and otherwise exceed the scope of the approval.

    The HOA sent the Defendant a letter on July 14, 2017 informing him that he was in violation of the deed restrictions and demanding removal of the unauthorized exterior modifications within 30 days. (Compl. Ex. 5.) In response, the Defendant submitted revised plans to the HOA requesting approval of a retaining wall that was much higher and much broader than the wall detailed in the initial request. (Compl. Ex. 6.) The HOA subsequently denied the revised request and demanded that he comply with the plans that were approved by the HOA. The HOA sent the Defendant a second notice on September 1, 2017 advising him that he was in violation of the deed restrictions and again demanding removal of the unapproved exterior modifications. (Compl. Ex. 7.) The Defendant continued with the construction of the unapproved exterior modifications. (Answer 1-2.)

    On April 27, 2018, the HOA's counsel sent the Defendant a letter advising him that he was in violation of the deed restrictions and demanding removal of the unapproved exterior modifications within 30 days. (Compl. 8.) The Defendant responded by email on May 1, 2018 indicating that he would not remove the unapproved exterior modifications and that he would continue construction until the project was completed. (Compl. Ex. 9; Answer 2). The Defendant and the HOA's counsel engaged in a back-and-forth email exchange that ultimately concluded with the Defendant stating that he would continue constructing the exterior modifications. *Id.*

    On June 26, 2018, the Plaintiff filed a complaint seeking a declaratory judgment that the HOA is entitled to enforce the terms of the deed restrictions that prohibit owners from constructing exterior modifications without the board's prior written

approval and that the Defendant violated the deed restrictions by constructing

unapproved exterior modifications. The Plaintiff also seeks a permanent injunction

ordering the Defendant to restore the lot to conform to what was approved by the board,

to remove all of the unapproved exterior modifications, and to cease construction of any

additional unapproved exterior modifications unless and until the Defendant obtains

the board's prior written approval as to the additional exterior modifications. In

addition, the Plaintiff seeks a monetary judgment for the amounts expended in

attempting to address the violations, including court costs, attorney fees, and related

expenses.

     The Court must make disposition of the motion for summary judgment within

the confines of Civil Rule 56(C), as well as the construction and interpretation of that

rule by the Supreme Court of Ohio. See e.g. *State ex rel. Zimmerman v. Tompkins*, 75

Ohio St.3d 447, 663 N.E.2d 639 (1996). Under Civil Rule 56(C), the moving party bears

the initial burden of informing the trial court of the basis for the motion and identifying

those portions of the record that demonstrate the absence of a genuine issue of material

fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio

St.3d 280, 293, 662 N.E.2d 264 (1996). The moving party cannot discharge its burden

with a conclusory assertion that the nonmoving party has no evidence to prove its case;

the moving party must point to evidence of the type listed in Civil Rule 56(C),

affirmatively demonstrating that the nonmoving party has no evidence to support the

claims. *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997). In doing so, the

moving party must rely exclusively on "pleadings, depositions, answers to

interrogatories, written admissions, affidavits, transcripts of evidence in the pending

case, and written stipulations of fact" to establish that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Civ.R. 56(C).

If the moving party satisfies its burden, the burden then shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila*, at 429. Summary judgment should be granted where the nonmoving party does not respond with – or fails to set forth, by affidavit or as otherwise provided in Civil Rule 56 – specific facts showing that there is a genuine issue for trial. *Dresher,* 75 Ohio St.3d at 293; Civ.R. 56(E).

A motion for summary judgment may not be granted unless the court determines that: (1) no genuine issue as to any material fact remains for litigation; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Tompkins,* 75 Ohio St.3d at 448.

As an initial matter, the Court notes that the Defendant attached several exhibits to his response to the Plaintiff's motion for summary judgment. The exhibits are not self-authenticating, and the Defendant did not submit an affidavit that incorporates the exhibits. The Court, therefore, cannot consider the exhibits that were improperly attached to the Defendant's response.

As an owner of a lot in the North Orange Residential Subdivision, the Defendant is subject to the Declaration of Covenants, Easements, Restrictions and Assessment Liens for North Orange Residential Subdivision and the Code of Regulations of North Orange Homeowners' Association. (Compl. Exs. 2 and 3.) Article II, Section 1 of the deed restrictions provides that no improvements or changes of any kind may be

4

"commenced or permitted to remain on any Lot or Common Area unless such
Improvement or change has the prior written approval of the Developer." (Compl. Ex.
2.) The rights of the developer were later transferred to the HOA under Article V,
Section 6. *Id.*

It is undisputed that the Defendant submitted a plan to the HOA to install a one-
foot retaining wall around specific flower beds on the lot using a particular type and
color of paver stone. (Compl. Ex. 4.) It is also undisputed that the HOA approved this
plan and that the Defendant began construction of the exterior modifications. The
Defendant admits that he deviated from the original plan in building retaining walls that
exceeded one foot and extended to areas beyond those designated in the plans. (Answer
1-2.) The Defendant submits that he raised the height of the retaining wall in some
locations "to even out flower beds and to make the walls work." *Id.* at 1. The Defendant
also deviated from the approved plan by using paver stones of a different color,
installing exterior electrical outlets and wiring, beginning to install five water fountains,
and installing outdoor lighting on walls and spotlights focused on the house, trees,
fountains, and mailbox. (Pl.'s Mot. Summ. J., Ex. D, ¶5, Exs. D-1 through D-5.)

After being informed by the HOA that his exterior modifications did not comply
with the approved plans, the Defendant submitted revised plans to the HOA for
approval. (Compl. Ex. 6.) The revised plans did not include electrical outlets and
wiring, outdoor lighting, or five water fountains. *Id.* The HOA did not approve the
Defendant's revised plans. The Defendant, nonetheless, continued construction of the
exterior modifications. It is undisputed that the HOA sent the Defendant letters
advising him that he was in violation of the deed restrictions and that the Defendant
communicated with the HOA and its counsel about the unapproved exterior

5

modifications. (Compl. Exs. 5, 7, 8, and 9.)  The Defendant admits that he never

received an approval from the HOA for his revised plan. (Answer 2.)  Despite the

communications with the HOA and its counsel, the Defendant continued constructing

the exterior modifications and refused to comply with the original approved plans.

The North Orange Residential Subdivision is governed by R.C. Chapter 5312.

Any planned community is subject to R.C. 5312.02, which requires a declaration and

bylaws to be filed in the officer of the recorder for the county in which the planned

community is located. R.C. 5312.02(A).  The North Orange Residential Subdivision

meets the definition of a planned community because the lot owners become members

of the HOA that governs the community and the lot owners support – by membership or

fees – property or facilities for all owners to use. R.C. 5312.01(1) and (3).  The deed

restrictions provide that the lot owners in the subdivision are all members of the HOA.

(Compl. Ex. 2, p. 2.)  The restrictions further provide that the lot owners are required to

pay assessments for common expenses. *Id.* at pp. 17-18.

Under R.C. 5312.13:

> The owners association and all owners, residents, tenants,
> and other persons lawfully in possession and control of any
> part of an ownership interest shall comply with any
> covenant, condition, and restriction set forth in any recorded
> document to which they are subject, and with the bylaws and
> the rules of the owners association, as lawfully amended. Any
> violation is grounds for the owners association or any owner
> to commence a civil action for damages, injunctive relief, or
> both, and an award of court costs and reasonable attorney's
> fees in both types of action.

Because the Defendant is a lot owner in the subdivision, he is subject to all of the

covenants, conditions, and restrictions set forth in the deed restrictions.  The Defendant

has failed to comply with Article II, Section I of the deed restrictions that requires a lot

owner to obtain prior written approval from the HOA before commencing any exterior improvements or changes. (Compl. Ex. 2, pp. 4-5.) The Defendant also failed to comply with Article III, Section 17 of the deed restrictions that requires prior written approval of the HOA to install exterior lighting. *Id.* at p. 10. Although the Defendant's initial plan was approved by the HOA, the Defendant admittedly deviated from the plan without prior written approval of the HOA. The Defendant has also admittedly refused to remove those exterior modifications that have not been approved by the HOA.

There is no genuine issue of material fact regarding the Defendant's violation of the deed restrictions by deviating from his initial approved plan and failing to obtain prior written approval. The Defendant contends that the HOA is discriminating against him because there are other lots in the subdivision that have retaining walls higher than one foot. The restrictions, however, provide that "[a]pproval shall be based, among other things, upon conformity and harmony of the proposed plans and specifications with the design and quality of the Subdivision." (Compl. Ex. 2, p.6.) "[A]ppearance and type of construction, materials, colors, setting, height, grade, finished grade elevation, and landscaping and tree removal" are all taken into consideration by the HOA. *Id.* Even if the Defendant had presented through admissible evidence that other lots in the subdivision had retaining walls above one foot, it would not provide a defense to the Defendant for failing to abide by the deed restrictions.

The HOA has the authority under R.C. 5312.13 and Article V, Section 1 of the deed restrictions to enforce the restrictions against the Defendant. (Compl. Ex. 2, pp. 18-19.) "It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is

7

about to be done for which he has no adequate remedy at law.'" *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56, 378 N.E.2d 145 (1978), quoting *Stephen v. Daniels*, 27 Ohio St. 527, 536 (1875).

The Plaintiff is, therefore, entitled to the declaratory judgment and injunctive relief it seeks against the Defendant. The Plaintiff is entitled to the following declarations: (1) the Plaintiff is entitled to enforce the terms of the deed restrictions prohibiting owners of lots in the subdivision from constructing exterior modifications on any lot in the subdivision without the board's prior written approval; and (2) the Defendant has violated the deed restrictions by constructing the unapproved exterior modifications without the board's prior written approval. The Plaintiff is also granted a permanent injunction ordering the Defendant to restore the lot to conform to the approval by the board, to remove all of the unapproved exterior modifications, and to cease construction of any additional unapproved exterior modifications unless and until the Defendant obtains the board's prior written approval for any additional exterior modifications.

Under R.C. 5312.13, the Plaintiff is entitled to an award of court costs and reasonable attorney fees incurred in bringing this civil action to enforce the deed restrictions. The Plaintiff's attorney – Nicholas R. Barnes – executed an affidavit stating that the amount of attorney fees incurred in preparing for and prosecuting this case through September 30, 2018 is $7,140. (Pl.'s Mot. Summ. J., Ex. C, ¶¶ 18-20.) Copies of the itemized billing statements are attached to Mr. Barnes's affidavit as Exhibits C-4 through C-10. In addition to the attorney fees, Mr. Barnes states that the Plaintiff incurred the cost of $210 for filing fees. *Id.* at ¶ 21. The Plaintiff is entitled to an award of $7,350 for attorney fees and costs incurred through September 30, 2018. The

Plaintiff submits that it will seek reimbursement for all attorney fees and costs incurred after September 30, 2018 by providing another affidavit. The Plaintiff has until **February 25, 2019** to request attorney fees after September 30, 2018 by providing sufficient documentation to the Court. The Defendant will have **two weeks** from the date the Plaintiff files its supplemental request for attorney fees to file a response. The Plaintiff may file a reply within **seven days**.

The Plaintiff's motion for summary judgment is GRANTED. Any court costs must be paid by Defendant Joseph W. Suarez.

Dated: February 8, 2019.

DAVID M. GORMLEY, JUDGE

---

The Clerk of this Court is hereby Ordered to serve a copy of this Judgment Entry upon the following by ☑ Regular Mail, ☐ Mailbox at the Delaware County Courthouse, ☐ Facsimile transmission

Nicholas R. Barnes, *Counsel for Plaintiff*, Williams & Strohm, LLC; Two Miranova Place, Suite 380, Columbus, OH 43215

Joseph W. Suarez, *Defendant*, 7840 Overland Trail, Delaware, OH 43015

EXHIBIT I

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

NORTH ORANGE HOMEOWNERS
ASSOCIATION, INC.

         Plaintiff-Appellee

-vs-

JOSEPH W. SUAREZ

         Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2019 CAE 02 0015

OPINION

CHARACTER OF PROCEEDING:

JUDGMENT:

DATE OF JUDGMENT ENTRY:

APPEARANCES:

For Plaintiff-Appellee

ROBIN STROHM
Two Miranova Place
Suite 380
Columbus, OH 43215

Civil appeal from the Delaware County
Court of Common Pleas, Case No.18 CVH
06 0329

Affirmed

For Defendant-Appellant

COURTNEY HANNA
155 W. Main Street
Suite 200
Columbus, OH 43215

2019 OCT 23  AM 10: 07

CLERK OF COURTS
DELAWARE COUNTY, OHIO
COURT OF APPEALS
FILED

Court of Appeals
Delaware Co., Ohio
I hereby certify the within be a true
copy of the original on file in this office.
Natalie Fravel, Clerk of Courts
By _____ Deputy

Delaware County, Case No. 2019 CAE 02 0015                                          2

*Gwin, P.J.*

{¶1}   Appellant appeals the February 11, 2019 and April 18, 2019 judgment
entries of the Delaware County Court of Common Pleas granting appellee's motion for
summary judgment, denying appellant's motion to vacate, and granting appellee's motion
for additional attorney fees.

*Facts & Procedural History*

{¶2}   Appellant Joseph Suarez ("Suarez") is the owner of the lot at 7840 Overland
Trail ("Lot") in Delaware, Ohio. Appellee North Orange Homeowners' Association, Inc.
("Association") is a not-for-profit corporation that governs the uses of the lots in the North
Orange Residential Subdivision ("Subdivision"). The lots in the Subdivision are subject
to restrictions set forth in the Declaration of Covenants, Easements, Restrictions, and
Assessment Liens for the North Orange Residential Subdivision.

{¶3}   On June 26, 2018, appellee filed a complaint against appellant. Appellee
alleged that after it approved appellant's request in 2017 to install a one-foot retaining
wall, appellant deviated substantially from the plans by: building retaining walls that
exceed one foot and extend to areas beyond those in his request; installing electrical
outlets and lines not referenced in the request; and otherwise exceeding the scope of the
approval. In its complaint, appellee sought a declaration that it is entitled to enforce the
terms of the deed restrictions prohibiting owners of lots in the Subdivision from
constructing exterior modifications on any lot in the Subdivision without the Board's prior
written approval and a declaration that appellant violated the deed restrictions by
constructing the unapproved exterior modifications without the Board's prior written
approval. Appellee also sought a permanent injunction ordering appellant to restore the

Delaware County, Case No. 2019 CAE 02 0015                                      3

Lot to conform to the approval, to remove all of the unapproved exterior modifications, and to cease construction of any additional unapproved exterior modifications unless and until appellant obtains the Board's prior written approval.   Finally, appellee sought monetary damages for court costs and attorney's fees expended for attempting to address appellant's violations of the deed restrictions.

{¶4}   Appellant filed a pro se response to the complaint on July 12, 2018.  In his answer, appellant:  admitted his application for a retaining wall of one foot was approved by appellee; admitted the wall height did go over the approved plan of one foot due to the grade in the yard; admitted he received a letter from appellee stating he went over the one foot mark in his plan; admitted he e-mailed appellee telling them he had to raise the height of the retaining walls in some locations to even out the flower beds; stated he submitted a new application for a revised plan and asked appellee to come and walk the yard to see what issue he was having; appellee never responded to his request; denied he received a second letter from appellee; denied receiving a copy of the deed restrictions at closing; denied he violated any deed restrictions; and stated appellee is discriminating against him.   Appellant attached to his answer photographs of what he states are violations of the deed restrictions on multiple other homes in the Subdivision.

{¶5}   Appellee filed a motion for summary judgment on October 1, 2018, arguing the affidavits and attached documents demonstrate that no genuine issues of material fact exist to rebut that appellant constructed exterior modifications on his Lot in violation of the applicable deed restrictions and that the Association is entitled to judgment for its attorney's fees and costs incurred as a result of having to enforce its deed restrictions against appellant.  Attached to the motion for summary judgment is the affidavit of Sue

Delaware County, Case No. 2019 CAE 02 0015                                                4

Bower ("Bower"), President of the Board of Directors for the Association.  Bower avers

the following:  all of the lots in the Subdivision are governed by the Declaration of

Covenants, Easements, Restrictions, and Assessment Liens for the North Orange

Residential Subdivision, a true and accurate copy of which is attached as Exhibit A-1;

Suarez submitted a request to install a one foot retaining wall around certain flower beds

on his lot known as 7840 Overland Trail, Delaware, Ohio to the Board on April 19, 2017;

the Board approved the request on April 20, 2017, as the one foot retaining wall around

the limited portion of the Lot detailed in the request is in line with other retaining walls in

the Subdivision and consistent with the Subdivision's look and feel; Suarez substantially

deviated from the approval by building walls much taller than one foot, building walls in

many areas beyond those detailed in the request and allowed in the approval, installing

exterior electrical outlets and wiring, beginning the installation of five water fountains, and

installing outdoor lighting on exterior walls and spot lights focusing on the house, trees,

fountains, and mailbox on the Lot; the unapproved modifications are well beyond anything

contained on any other lot in the Subdivision and do not match the Subdivision's look and

feel; none of the other lots in the Subdivision have retaining walls as tall and extensive as

those on the Lot, nor do any of the other lots in the Subdivision have the substantial

outdoor lighting, outdoor electrical outlets and wiring, or five water fountains that Suarez

has installed or is in the process of installing on the Lot; the Board's management

company at the time contacted Suarez and informed him the unapproved modifications

must be removed; Suarez has never removed the unapproved modifications; Suarez kept

building the unapproved modifications and, on July 20, 2017, he submitted revised plans

to the Board for its approval reflecting some of the unapproved modifications that were

Delaware County, Case No. 2019 CAE 02 0015                                    5

not included in his initial request; the Board never approved the second request; the Board

repeatedly requested Suarez remove the unapproved modifications, but he refused to do

so and continued adding other unapproved modifications; the Board received complaints

from owners in the Subdivision about the height of the retaining walls that Suarez was

building on the Lot, the substantial amount of lighting installed by Suarez, and other

unapproved modifications; attached as Exhibits A-2, A-3, A-4, A-5, A-6, and A-7 are

pictures of the Lot, true and accurate copies of how it appeared on April 27, 2018; the

Board authorized the filing of this action against Suarez after he continually refused to

remove the unapproved modifications, and, instead, continued constructing more of them;

the Board is not discriminating against Suarez by pursuing this enforcement action, and

never has discriminated against him; and the Board has not received an exterior

modification application from Suarez since the Association's complaint was filed on June

26, 2018.

{¶6}    Also attached to the motion for summary judgment is the affidavit of

Nataleigh Dillon ("Dillon"), an employee at the property management company hired by

the Association.  Dillon avers as follows: Suarez made substantial exterior modifications

to the Lot, including building retaining walls taller than one foot around flower beds, trees,

and other areas of the Lot, installing exterior electrical outlets and other electrical wiring,

beginning of the installation of five water fountains, and installing outdoor lighting on walls

and spot lights focused on the house, trees, fountains, and mailbox; on June 27, 2018,

she took pictures of the Lot to detail the extent of the modifications and attached as

Exhibits B-1 and B-2 are two pictures of Suarez's Lot taken on June 27, 2018; the Board

never approved most of the modifications; since CPS took over management of the

Delaware County, Case No. 2019 CAE 02 0015                                      6

Association on April 1, 2018, neither she nor anyone else at CPS received an exterior modification application or any other request from Suarez for exterior modifications; as part of her duties as the property manager, she performs routine inspections of all of the lots in the Subdivision; none of the other lots in the Subdivision contain the extensive retaining walls, outdoor electrical outlets and wiring, five water fountains, or substantial outdoor lighting like Suarez has constructed on his lot; and the Association authorized the filing of the complaint against Suarez to enforce the deed restrictions.

{¶7}   Next, appellee attached to the motion for summary judgment the affidavit of Nicholas Barnes ("Barnes"), lead counsel for appellee in this action. Barnes avers: he received an e-mail attached as C-1 from Suarez on June 29, 2018 after the Association filed its complaint in which Suarez stated he was "pretty pumped to take this on and drain the HOA in attorney fees"; he contacted Suarez's bankruptcy counsel who informed him that he is not representing Suarez with regard to this matter and this matter involves a post-petition debt that is not affected by the automatic stay; the total amount of attorney's fees and costs incurred by the Association in preparing for and prosecuting the case through September 30, 2018 is $7,350, as evidenced by the true and accurate copies of the itemized billing statements attached as Exhibits C-4, C-5, C-6, C-7, C-8, C-9, and C-10; his hourly rate of $200.00 per hour is reasonable and customary for attorneys with ten years of legal experiences in the Columbus metropolitan area; and the hourly rate of $200.00 for Attorney Williams is reasonable and customary.

{¶8}   The final affidavit attached to the motion for summary judgment is the affidavit of Aaron Born ("Born"), a member of the Board of the Association. Born avers as follows: the Board approved a request from Suarez to install a one foot retaining wall

Delaware County, Case No. 2019 CAE 02 0015                                          7

around certain flower beds on his Lot on April 20, 2017; Suarez substantially deviated from the approval by building walls much taller than one foot, building walls in many areas beyond those detailed in his request and allowed in the approval, installing exterior electrical outlets and wiring, beginning the installation of five water fountains, and installing outdoor lighting on exterior walls and spot lights focusing on the house, trees, fountains, and mailbox; on September 4, 2018, he took the picture attached as Exhibit D-1 that is a true and accurate representation of Suarez's home; no other lot in the Subdivision has anywhere near as many lights or is nearly as bright as Suarez's Lot; Suarez's Lot's exterior is not consistent with the Subdivision's look and feel; Exhibits D-2 and D-3 are pictures of the unapproved modifications on Suarez's Lot that he took on May 24, 2018; Exhibit D-4 is a picture he took of Suarez's Lot on August 24, 2018 showing Suarez continued with the unapproved modifications after this case was filed; Exhibit D-5 is a picture of Suarez's Lot he took on May 30, 2018 showing a black wall on the lot, which was not part of Suarez's request or the approval; and the unapproved modifications are well beyond anything contained on any other lot in the Subdivision and do not match the Subdivision's look and feel.

{¶9}   The deed restrictions provide that no owner may construct any exterior improvements on a lot in the Subdivision without submitting a request to the Association and receiving its approval prior to construction.  Article II, Section 1.

{¶10}  On October 8, 2018, Appellant filed a pro se "Plaintiffs Motion for Summary Judgment Response."  In the "Memorandum Support Response" portion of his response, appellant states:  he did not violate any deed restrictions because there are no rules on retaining walls; the wall height did go over the approved plan of one foot due to grade in

Delaware County, Case No. 2019 CAE 02 0015                                              8

the yard; he submitted revised plans with no response from the Association; he installed

electrical outlets on his property, but did not install water fountains; he installed outdoor

lighting for security reasons; the Board is discriminating against him; and thirty-two

retaining walls in the Subdivision are the same height or higher than his. Appellant also

detailed what he believed to be lies in the affidavits submitted by the Association in its

motion for summary judgment. Appellant attached as exhibits to his response

photographs of other homes in the Subdivision.

{¶11}  Appellee filed a reply in support of its motion for summary judgment, arguing

that none of the allegations contained in appellant's response may be considered

because appellant did not provide any affidavits or proper Civil Rule 56 evidence in

response. Appellant filed a counterclaim, motion for dismissal, and second response to

motion for summary judgment on October 19, 2018. On October 22, 2018, appellee filed

a motion to strike the three pleadings appellant filed on October 19th.

{¶12}  The trial court issued a judgment entry on January 25, 2019 granting

appellee's motion to strike appellant's counterclaim, motion to strike appellant's second

response to the motion for summary judgment, and denying appellant's motion for

dismissal. Appellant filed a pro se affidavit on February 5, 2019. Appellee filed a motion

to strike the affidavit. The trial court granted the motion to strike on February 11, 2019,

finding it was not permitted by the Rules of Civil Procedure and is not a proper affidavit

because it does not make averments based on personal knowledge.

{¶13}  The trial court also issued a judgment entry granting appellee's motion for

summary judgment on February 11, 2019. The trial court found that appellant attached

several exhibits in his response to the motion for summary judgment that are not self-

Delaware County, Case No. 2019 CAE 02 0015                                          9

authenticating and appellant did not submit an affidavit incorporating the exhibits; thus,

the trial court determined it could not consider the exhibits that were improperly attached

to appellant's response.

{¶14} The trial court further found as follows:  as an owner of a Lot in the

Subdivision, Suarez is subject to the Declaration of Covenants, Easements, Restrictions,

and Assessment Liens for North Orange Residential Subdivision and the Code of

Regulations of the Association; Article II, Section 1 of the deed restrictions provides that

no improvements or changes of any kind may be commenced or permitted to remain on

any lot unless such improvement or change has the prior written approval of the

developer; the rights of the developer were later transferred to the Association under

Article V, Section 6; it is undisputed that Suarez submitted a plan to the Association to

install a one-foot retaining wall around specific flower beds on the lot, the Association

approved this plan, and Suarez began construction of the exterior modifications; in his

answer, Suarez admits he deviated from the original plan and raised the height of the wall

in some areas to even out the flower beds and make the walls work; Suarez also deviated

from the plan by installing exterior electrical outlets and writing, beginning to install

fountains, and installing outdoor lighting on walls and spotlights; Suarez submitted revised

plans, but the Association did not approve them; Suarez continued construction; Suarez

admitted in his answer that he never received an approval for his revised plan; the

Subdivision is governed by R.C. Chapter 5312; because Suarez is a lot owner in the

Subdivision, he is subject to all of the covenants, conditions, and restrictions in the deed

restrictions; Suarez failed to comply with Article II, Section 1 of the deed restrictions that

requires a lot owner to obtain prior written approval from the Association before

commencing any exterior improvements or changes; Suarez failed to comply with Article III, Section 17 of the deed restrictions that requires prior written approval of the Association to install exterior lighting; Suarez admittedly deviated from the approved plan without prior written approval of the Association; Suarez admittedly refused to remove the exterior modifications that have not been approved by the Association; there is no genuine issue of material fact regarding Suarez's violation of the deed restrictions; even if Suarez presented through admissible evidence that other lots in the Subdivision had retaining walls above one foot, it would not provide a defense to Suarez; and the Association has the authority under R.C. 5312.13 and Article V, Section 1 of the deed restrictions to enforce the restrictions against Suarez.

{¶15}  The trial court held appellee is entitled to a declaratory judgment that: (1) appellee is entitled to enforce the terms of the deed restrictions prohibiting owners of lots in the subdivision from constructing exterior modifications on any lot in the subdivision without the board's prior written approval and (2) appellant has violated the deed restrictions by constructing the unapproved exterior modifications without the board's prior written approval.  The trial court also granted appellee a permanent injunction ordering appellant to restore the lot to conform to the approval by the Board, remove all of the unapproved exterior modifications, and cease construction of any additional unapproved exterior modifications unless and until appellant obtains the Board's prior written approval for any additional exterior modifications.  Finally, the trial court determined that, pursuant to R.C. 5312.13, appellee is entitled to an award of court costs and reasonable attorney fees, awarding appellee $7,350 for attorney fees and costs

Delaware County, Case No. 2019 CAE 02 0015                                              11

through September 30, 2018, and ordering further attorney fee documentation to be filed
for fees after September 30, 2018.

{¶16} Appellee filed a motion for additional attorney fees on February 14, 2019,
attaching the affidavit of Barnes requesting an additional $3,240 in attorney fees. Barnes
attached invoices to his affidavit.

{¶17} On February 22, 2019, appellant obtained counsel and his counsel filed a
notice of appearance.

{¶18} On March 11, 2019, appellant, through counsel, filed a motion to vacate the
judgment entry granting summary judgment. Appellant argued his motion should be
granted due to excusable neglect, because, as a pro se litigant, he failed to respond to
appellee's motion for summary judgment by affidavit or otherwise with specific facts
showing that there are genuine issues of material fact for trial; thus, the trial court relied
solely on the version of the facts set forth by appellee. Appellant stated he attempted to
advocate for himself and did not demonstrate a complete disregard for the judicial system.
Appellant also argued his motion should be granted pursuant to Civil Rule 60(B)(3)
because the affidavits attached to appellee's motion for summary judgment contained
untruths and misrepresentations regarding material facts. Finally, appellant contended
the judgment should be vacated pursuant to Civil Rule 60(B)(5) because it would be
inequitable not to vacate the judgment.

{¶19} Attached to his motion to vacate is Suarez's affidavit. Suarez avers:
appellee has failed to uniformly, fairly, and impartially enforce the deed restrictions;
appellee failed to respond to the revised plans he submitted; by failing to respond,
appellee is wrongfully circumventing the deed restrictions; appellee is not acting in good

faith by choosing to ignore Suarez; he has never been contacted by the property
management company; on three separate occasions, he has offered to have appellee
come to the property so he could explain how varying the retaining walls creates a uniform
look; appellee has attached affidavits to their motion for summary judgment that are not
truthful and misrepresent the modifications made on the property; the photos attached to
the affidavits were old photos taken before the retaining walls were lowered; he has not
installed any water fountains on the property; the outdoor lighting was installed for security
purposes and there are multiple homes in the community with the lighting he proposes;
the only spot lights on the property are like other houses in the community; he lowered
the retaining walls prior to appellee's complaint being filed; as of this date, 90% of the
retaining walls conform to the plans approved by appellee; he has not constructed new
walls and has not continued to construct exterior modifications; appellee is not uniformly
enforcing the deed restrictions; there are thirty-two other retaining walls in the
development that are the same height or higher than his retaining walls; there are many
other properties in the community that are violating the deed restrictions and appellee is
choosing not to enforce these violations; appellee created this situation by refusing to
reject or approve his revised plans; and he has a meritorious defense.

{¶20}  Appellee filed a motion to strike affidavit and memorandum in opposition to
appellant's motion to vacate on March 22, 2019.  Appellant filed a reply on March 29,
2019.

{¶21}  On April 18, 2019, the trial court issued a judgment entry granting in part
and denying in part appellee's motion to strike affidavit and denying appellant's motion to
vacate.  The trial court reviewed the affidavit of Suarez and found Suarez does not

Delaware County, Case No. 2019 CAE 02 0015.                                        13

specifically state in the affidavit that the statements are based on his personal knowledge.

Further, that some of Suarez's statements are legal conclusions and some statements

are those from which personal knowledge can be inferred; thus, the trial court struck

several paragraphs of Suarez's affidavit. The trial court found Suarez's motion to vacate

was timely, but found he failed to establish grounds for relief under Civil Rule 60(B).

Because appellant did not offer any excusable neglect other than his status as a pro se

litigant, the trial court found appellant failed to demonstrate excusable neglect. As to

appellant's argument pursuant to Civil Rule 60(B)(3), the trial court stated appellant did

not establish appellee engaged in deceit or other unconscionable conduct to obtain a

judgment, but appellant did show that he disagrees with the testimony in the affidavits

and photographs referred to in the affidavits. Thus, the trial court found appellant did not

establish appellee engaged in the type of fraud that warrants relief under Civil Rule

60(B)(3).

{¶22}  With regards to appellant's argument as to Civil Rule 60(B)(5), the trial court

found enforcing the judgment against appellant is not unjust and would not cause a

miscarriage of justice. The trial court noted:  appellant chose to represent himself for

eight months; appellant repeatedly failed to comply with the Rules of Civil Procedure and

with the court's local rules; appellant only retained counsel after he received an

unfavorable outcome; and appellant's decision to proceed pro se resulted in his failure to

provide the court with admissible evidence to rebut the motion for summary judgment.

{¶23}  The trial court found it need not address whether appellant has a meritorious

defense to appellee's claims. Lastly, the trial court found appellant is not entitled to a

hearing on the motion to vacate, because, even if it takes as true what is contained in

appellant's affidavit, appellant has failed to establish a ground for relief under Civil Rule 60(B).

{¶24} Also on April 18, 2019, the trial court issued a judgment entry granting appellee's motion for award of additional attorney fees incurred in the amount of $3,240 based upon the affidavit from Barnes and copies of the itemized billing statements.

{¶25} Appellant appeals the February 11, 2019 and April 18, 2019 judgment entries of the Delaware County Court of Common Pleas and assigns the following as error:

{¶26} "I. THE TRIAL COURT SHOULD HAVE DENIED PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT SHOULD HAVE PRECLUDED THE GRANTING OF SUMMARY JUDGMENT.

{¶27} "II. THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT'S MOTION TO VACATE.

{¶28} "III. THE JUDGMENT ENTRY GRANTING PLAINTIFF-APPELLEE'S MOTION FOR AWARD OF ADDITIONAL ATTORNEY FEES INCURRED RENDERED HEREIN ON APRIL 18, 2019 SHOULD BE REVERSED WHEN THE COURT REVERSES THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE."

I.

{¶29} In his first assignment of error, appellant argues the trial court erred in granting appellee's motion for summary judgment because there are genuine issues of material fact that preclude the granting of summary judgment.

Delaware County, Case No. 2019 CAE 02 0015                                   15

*Summary Judgment Standard*

{¶30} Civ.R. 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings,
depositions, answers to interrogatories, written admissions, affidavits,
transcripts of evidence, and written stipulations of fact, if any, timely filed in
the action, show that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law. No evidence or
stipulation may be considered except as stated in this rule. A summary
judgment shall not be rendered unless it appears from the evidence or
stipulation, and only from the evidence or stipulation, that reasonable minds
can come to but one conclusion and that conclusion is adverse to the party
against whom the motion for summary judgment is made, that party being
entitled to have the evidence or stipulation construed mostly strongly in the
party's favor. A summary judgment, interlocutory in character, may be
rendered on the issue of liability alone although there is a genuine issue as
to the amount of damages.

{¶31} A trial court should not enter a summary judgment if it appears a material
fact is genuinely disputed, nor if, construing the allegations most favorably towards the
non-moving party, reasonable minds could draw different conclusions from the
undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311
(1981). The court may not resolve any ambiguities in the evidence presented. *Inland
Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d
271 (1984). A fact is material if it affects the outcome of the case under the applicable

Delaware County, Case No. 2019 CAE 02 0015                                    16

substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶32} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243. The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

{¶33} Appellant contends that genuine issues of material fact exist in order to preclude summary judgment, such as whether the exterior modifications, water fountains, and outdoor lighting was in violation of the restrictions, whether appellee is selectively enforcing the restrictions, whether the other homes in the community have similar violations, and whether appellant has stopped the exterior modifications.

{¶34} Pursuant to Civil Rule 56(C), only certain evidence and stipulations, as set forth in that section, may be considered by the court when deciding a motion for summary judgment. Specifically, the court is only to consider the "pleadings, depositions, answers

Delaware County, Case No. 2019 CAE 02 0015                                    17

to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact." Civ.R. 56(C). The trial court may consider a type of document not expressly mentioned in Civil Rule 56(C) if such document is "accompanied by a personal certification that [it is] genuine or [is] incorporated by reference in a property framed affidavit pursuant to Civil Rule 56(E)." *Deutsche Bank Nat'l Trust Co. v. Hansen*, 5th Dist. Fairfield No. 2010 CA 00001, 2011-Ohio-1223.

{¶35} Upon review, we find appellee met its initial burden of demonstrating the absence of a genuine issue of fact by submitting sufficient and proper Civil Rule 56 evidence, consisting of the incorporation of the pleadings, admissions, affidavits of Bower, Dillon, Barnes, and Born, and various exhibits attached to and incorporated in the affidavits, to demonstrate the absence of a genuine issue of material fact.

{¶36} The burden then shifted to appellant to set forth specific facts, pursuant to the confines of Civil Rule 56, demonstrating a genuine issue of material fact does exist. However, appellant failed to set forth specific facts showing a genuine issue of material fact exists by affidavit or other Civil Rule 56 evidence. Appellant could not rest on the allegations or denials in the pleadings, but had to set forth specific facts by the means listed in Civil Rule 56 showing that a triable issue of fact exists. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988). Appellant's response contained a series of unsupported allegations and the documents attached to his response were not self-authenticating. Appellant's unsubstantiated response thus failed to meet his burden and did not raise any genuine issue of material fact to preclude summary judgment. Further, the trial court relied not only on the facts as presented by appellee, but also on admissions made by appellant.

Delaware County, Case No. 2019 CAE 02 0015                                    18

{¶37}   Appellant also argues that the trial court and this Court should afford him

reasonable leeway because he responded to the motion for summary judgment pro se.

However, "it is well established that pro se litigants are presumed to have knowledge of

the law and legal procedures and that they are held to the same standard as litigants who

are represented by counsel." *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-

Ohio-6448, 800 N.E.2d 25.  They are not given greater rights than represented parties,

and must bear the consequences of their mistakes.  *Carskadon v. Avakian*, 5th Dist.

Delaware No. 11 CAG 02 0018, 2011-Ohio-4423.

{¶38}   Appellant's first assignment of error is overruled.

II.

{¶39}   In his second assignment of error, appellant contends the trial court erred

in denying his motion to vacate.

{¶40}   To prevail on a motion brought under Civil Rule 60(B), a movant must

demonstrate that (1) the party has a meritorious defense or claim to present if relief is

granted; (2) the party is entitled to relief under one of the grounds stated in Civil Rule

60(B)(1) through (5); and (3) the motion is made within a reasonable time * * *."  *GTE

Automatic Electric, Inc. v. ARC Industries*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976).  A

failure to establish any one of these three requirements will cause the motion to be

overruled.  *Argo Plastic Prod. Co. v. Cleveland*, 15 Ohio St.3d 389, 474 N.E.2d 328

(1984).  There is no dispute that the motion in this case was made within a reasonable

time.

{¶41}   A motion for relief from judgment is addressed to the sound discretion of the

trial court and must not be disturbed by this Court absent an abuse of discretion.  *Griffey*

Delaware County, Case No. 2019 CAE 02 0015                                            19

*v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987).  The Supreme Court of Ohio has

defined the term of abuse of discretion as implying the court's attitude is unreasonable

arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d

1140 (1983).

{¶42}  Appellant argues the trial court abused its discretion in finding no excusable

neglect pursuant to Civil Rule 60(B)(1).  To determine whether neglect is "excusable"

under Civil Rule 60(B)(1), a court must consider all the surrounding facts and

circumstances.  *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 520 N.E.2d 564 (1988).

Excusable neglect has been defined as some action "not in consequence of the party's

own carelessness, inattention, or willful disregard of the process of the court, but in

consequence of some unexpected or unavoidable hindrance or accident."  *Maggiore v.*

*Barensfeld*, 5th Dist. Stark Nos 2011CA00180, 2011CA00230, 2012-Ohio-2909.  Further,

"excusable neglect is not present if the party seeking relief could have prevented the

circumstances from occurring." *Id.*

{¶43}  Appellant contends he demonstrated excusable neglect because, as a pro

se litigant, he failed to respond to appellee's motion for summary judgment by affidavit or

otherwise with specific facts showing that there are genuine issues of material fact for

trial; thus the trial court relied solely on the version of facts set forth by appellee.  Appellant

argues he attempted to advocate for himself and did not demonstrate a complete

disregard for the judicial system.

{¶44}  In this case, we find the trial court did not abuse its discretion in finding no

excusable neglect under these facts and circumstances.  It is well established that pro se

litigants are held to the same standards as litigants represented by counsel and are

Delaware County, Case No. 2019 CAE 02 0015                                      20

presumed to have knowledge of the law and legal proceedings. *State ex rel. Fuller v.
Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25.

{¶45}  Ohio courts have held Civil Rule 60(B) is not intended to afford pro se
litigants relief from mistakes from the lack of legal counsel or from a pro se litigant's
unfamiliarity with the legal system, confusion, or misunderstanding of the law. *Sydnor v.
Qualls*, 4th Dist. Scioto No. 15CA3701, 2016-Ohio-8410; *Huntington Nat'l Bank v.
D'Egidio*, 9th Dist. Lorain No. 05CA008647, 2005-Ohio-5497; *Lebanon Auto Parts v.
Dracakis*, 12th Dist. Warren No. CA99-09-110, 2000 WL 433240 (April 17, 2000); *Gamble
Hartshorn LLC v. Lee*, 10th Dist. Franklin No. 17AP-35, 2018-Ohio-980; *Dayton Power
and Light v. Holdren*, 4th Dist. Highland No. 07CA21, 2008-Ohio-5121.  Additionally, this
Court has previously held that an appellant's legal inexperience does not equate to
excusable neglect and the failure to seek legal advice after receiving a complaint is not
excusable neglect under Civil Rule 60(B)(1).  *Long v. Ferrell*, 5th Dist. Stark No.
2017CA00066, 2018-Ohio-155; *Shankle v. Egner*, 5th Dist. Nos. 2011CA00121,
2011CA00143, 2012-Ohio-2027.  As stated by the Ninth District,

> Acting pro se * * * is neither excusable neglect nor any other reason
> justifying relief from judgment.  A party has a right to represent himself, but
> if he does so, he is subject to the same rules and procedures as litigants
> with counsel.  If the fact that a party chose not to be represented by counsel
> and was unsuccessful in pursuing his rights entitled that party to relief from
> judgment, every judgment adverse to a pro se litigant could be vacated to
> permit a second attempt, this time with counsel.  Such a circumstance would
> be unjust to the adverse party.

*Ragan v. Akron Police Dept.,* 9th Dist. Summit No. 16200, 1994 WL 18641 (Jan. 19, 1994). In this case, appellant chose to represent himself, as was his right. As such, appellant is presumed to have knowledge of the law and legal procedures.

{¶46} Appellant also argues his motion should be granted pursuant to Civil Rule 60(B)(3) because the affidavits attached to appellee's motion for summary judgment contained untruths and misrepresentations regarding material facts.

{¶47} The fraud or misconduct contemplated by Civil Rule 60(B)(3) is fraud or misconduct on the part of the adverse party in obtaining the judgment by preventing the losing party from fully and fairly presenting his defense, not fraud or misconduct which in itself would have amounted to a claim or defense in the case. *Bank of Am., N.A. v. Kuchta,* 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.2d 1040. As noted by the trial court, appellant's assertions that appellee's affidavits contain misrepresentations about when photographs were taken and the state of the modifications at his home on certain dates demonstrates appellant disagrees with appellee's assertions in the affidavits. However, a conflict in testimony generally does not fit the requirement of "deceit or other unconscionable conduct committed by a party to obtain a judgment." *Sydnor v. Qualls,* 4th Dist. Scioto No. 15CA3701, 2016-Ohio-8410. Additionally, nothing in the affidavits submitted by appellee prevented appellant from fully and fairly presenting his defense to the motion for summary judgment; rather, appellant failed to respond to appellee's motion for summary judgment by affidavit or otherwise with specific facts showing that there are genuine issues of material fact for trial. We find the trial court did not abuse its discretion in finding appellant did not establish that appellee engaged in the type of fraud that warrants relief under Civil Rule 60(B)(3).

Delaware County, Case No. 2019 CAE 02 0015                                    22

{¶48} Appellant also based his motion on "any other reason justifying relief from judgment" pursuant to Civil Rule 60(B)(5) and believes the judgment should be vacated pursuant to Civil Rule 60(B)(5) because it would be inequitable not to vacate the judgment.

{¶49} Civil Rule 60(B)(5) operates as a catch-all provision and "reflects the inherent power of a court to relieve a person from the unjust operation of a judgment." *Dutton v. Potroos*, 5th Dist. Stark No. 2010CA00318, 2011-Ohio-3646. However, it is not to be used as a substitute for any of the other more specific provision of Civil Rule 60(B). *Caruso-Ciersi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983). The grounds for invoking Civil Rule 60(B)(5) should be substantial and only used in extraordinary and unusual cases when the interests of justice warrant it." *Claycraft Motors, LLC v. Bulldog Auto Sales, Inc.*, 5th Dist. Fairfield No. 13-CA-70, 2014-Ohio-2086. Since appellant's conduct does not constitute excusable neglect to merit relief from judgment under the specific provisions of (B)(1) or (B)(3), it follows that appellant is not entitled to relief under (B)(5). The trial court did not abuse its discretion in finding this was not an extraordinary and unusual case where the interests of justice warrant the judgment being vacated pursuant to Civil Rule 60(B)(5).

{¶50} Appellant lastly contends the trial court abused its discretion in not holding an evidentiary hearing on his motion to vacate. However, as noted by the Ohio Supreme Court, "Civil Rule 60(B) relief is improper if any one of the [GTE] requirements is not satisfied." *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 666 N.E.2d 1134 (1996). Appellant has not met the second requirement set forth in *GTE*. Thus, because appellant is unable to satisfy all three prongs of the *GTE* test, we find no abuse of discretion in the

Delaware County, Case No. 2019 CAE 02 0015                                                    23

denial of appellant's motion to vacate. *Long v. Ferrell*, 5th Dist. Stark No. 2017CA00066, 2018-Ohio-155.

{¶51}  Appellant's second assignment of error is overruled.

III.

{¶52}  In his third assignment of error, appellant argues the judgment entry granting appellee's motion for award of additional attorney fees incurred should be reversed when this Court reverses the granting of the summary judgment in favor of appellee. Based upon our disposition of appellant's first and second assignment of errors, we overrule appellant's third assignment of error.

{¶53}  Based on the foregoing, appellant's assignments of error are overruled.

{¶54}  The February 11, 2019 and April 18, 2019 judgment entries of the Delaware County Court of Common Pleas are affirmed.

By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur

HON. W. SCOTT GWIN

HON. JOHN W. WISE

HON. PATRICIA A. DELANEY

WSG:clw 1009

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

NORTH ORANGE HOMEOWNERS
ASSOCIATION, INC.

               Plaintiff-Appellee    :

                               :

-vs-                          :        **JUDGMENT ENTRY**

JOSEPH W. SUAREZ         :

                               :

            Defendant-Appellant   :        CASE NO. 2019 CAE 02 0015

For the reasons stated in our accompanying Memorandum-Opinion, the February 11, 2019 and April 18, 2019 judgment entries of the Delaware County Court of Common Pleas are affirmed.  Costs to appellant.

HON. W. SCOTT GWIN

HON. JOHN W. WISE

HON. PATRICIA A. DELANEY

EXHIBIT  J

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, OHIO

NORTH ORANGE HOMEOWNERS'   :
ASSOCIATION,
    :
    Plaintiff,
    :    Case No. 18 CV H 06 0329
   -vs-
    :
JOSEPH W. SUAREZ,
    :
    Defendant.

## Judgment Entry Granting Plaintiff's 4/15/20 Motion for Award of Additional Attorney Fees Incurred

Plaintiff North Orange Homeowners' Association, Inc. ("HOA") filed a motion on April 15, 2020 for an award of additional attorney fees incurred as a result of post-judgment motions and an appeal filed by Defendant Joseph W. Suarez. In response, Suarez filed a motion to strike the HOA's motion for award of additional attorney fees, or, in the alternative, a memorandum contra the motion for award of additional attorney fees.

On February 11, 2019, the Court granted the HOA's motion for summary judgment and held that the HOA was "entitled to an award of court costs and reasonable attorney fees incurred in bringing this civil action to enforce the deed restrictions." (2/11/19 Judgment Entry, 8.) The HOA was awarded $7,350 for attorney fees and costs through September 30, 2018. The HOA then moved for an award of additional attorney fees incurred from October 1, 2018 through February 14, 2019. The Court granted the HOA's motion for an award of additional attorney fees in the amount of $3,240 on April 18, 2019.

LERK OF COURTS - DELAWARE COUNTY, OH - COMMON PLEAS COURT
CV H 06 0329 - GORMLEY, DAVID M

The HOA now moves the Court for an award of additional attorney fees incurred since February 14, 2019 in responding to Suarez's post-judgment motions and appeal. This Court resolved the post-judgment motions in favor of the HOA on April 18, 2019. The Fifth District Court of Appeals affirmed this Court's decision on October 23, 2019. The HOA submits that it has incurred $15,707.50 in attorney fees from February 15, 2019 through April 15, 2020.

Suarez moves to strike the HOA's motion for an award of additional attorney fees on the bases that the motion was not filed within a reasonable time, and that the Plaintiff is requesting an award for fees incurred after the Court of Appeals' decision was issued on October 23, 2019. Suarez acknowledges that neither Civ.R. 54(E) nor R.C. 5312.13 provide a deadline by which a request for attorney fees must be made. Suarez submits that the Court should determine whether the motion was filed within a "reasonable" time. Suarez contends that a delay of six months is not reasonable.

The HOA notes that Suarez does not dispute that the HOA is entitled to recover attorney fees for the post-judgment and appeal proceedings, and he does not contest the amount that the HOA requests for attorney fees through October 23, 2019. The HOA also notes that Suarez does not provide any authority for his assertion that the motion for additional attorney fees is not timely. The HOA moves for the award of fees under R.C. 5312.13, not Civ.R. 54(E). R.C. 5312.13 does not provide a deadline to make a request for attorney fees. The statute simply reads: "Any violation is grounds for the owners association or any owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action."

In a case cited by the HOA, *Gibney v. Toledo Bd. of Edn.*, 73 Ohio App.3d 99, 106, 596 N.E.2d 591 (6th Dist.1991), the court of appeals reviewed the trial court's decision rejecting a request for additional attorney fees due to the delay in filing for the fees. The court of appeals relied on case law determining that delay in filing a motion for attorney fees is not, in and of itself, a sufficient reason to deny the motion. *Id.* But in cases where a "post-judgment motion unfairly surprises or prejudices the affected party," the court's discretion will support a denial of the request for fees. *Id.* quoting *White v. New Hampshire Dept. of Emp. Security*, 455 U.S. 445, 454 (1982).

The HOA submits that Suarez has not suffered any prejudice as a result of the HOA's delay in filing the motion for additional fees because the parties were involved in settlement communications during that time. Suarez acknowledges that the parties engaged in settlement negotiations after the Court of Appeals issued its decision. The HOA filed its motion for an award of additional attorney fees only six months after the Court of Appeals' decision was issued. Suarez has failed to establish any prejudice that resulted from the delay because he was communicating with the HOA about settling the matter. The Court finds that the motion for an award of additional attorney fees is timely.

Suarez also contends that the HOA is not entitled to recover its attorney fees for participating in settlement negotiations. Suarez submits that the HOA voluntarily participated in settlement negotiations, and that the attorney's time spent negotiating a post-judgment settlement is not recoverable. Suarez asks the Court to deduct $2,852.50 – the amount of attorney fees incurred after October 23, 2019 – from the amount requested by the HOA.

The HOA contends that the attorney fees it incurred during settlement negotiations are reasonable attorney fees that it is entitled to recover. R.C. 5312.13 does not specifically address the issue. The statute merely provides for an award of court costs and reasonable attorney fees in actions for damages and injunctive relief. This Court must therefore determine whether it is reasonable to award attorney fees for the HOA's post-judgment and post-appeal settlement negotiations.

A trial court's determination regarding reasonable attorney fees is reviewed "upon full consideration of all of the circumstances." *Williams Creek Homeowners Assn. v. Zweifel*, 10th Dist. Franklin No. 07AP-689, 2008-Ohio-2434, ¶ 61, quoting *Nottingdale Homeowners' Assn. v. Darby*, 33 Ohio St.3d 32, 37, 514 N.E.2d 702 (1987). The circumstances in this case involve a civil action for injunctive relief and an award of costs and attorney fees. After judgment was granted in the HOA's favor, Suarez continued to litigate the matter through post-judgment motions and an appeal. The HOA prevailed and it is therefore entitled to recover the attorney fees reasonably incurred in obtaining and enforcing its judgment. Once the Court of Appeals issued its decision on the matter, the parties discussed settlement options. These settlement discussions ultimately did not produce a resolution.

The HOA is entitled to an award of reasonable attorney fees incurred in litigating Suarez's post-judgment motions and appeal. But the Court finds that the attorney fees incurred by the HOA in post-appeal settlement discussions are not reasonable. The Court therefore deducts $2,852.50 from the total amount of $15,707.50 sought by the HOA.

Plaintiff HOA's April 15, 2020 motion for an award of additional attorney fees incurred is granted. The HOA is awarded an additional $12,855 for attorney fees. When

4

added to the amount of attorney fees previously ordered to the HOA, the total award of

attorney fees is $23,445.


DAVID M. GORMLEY, JUDGE


The Clerk of this Court is hereby Ordered to serve a copy of this Judgment Entry upon the
following by ☒ Regular Mail, ☐ Mailbox at the Delaware County Courthouse, ☐ Facsimile transmission

Jesse M. Kanitz, *Counsel for Plaintiff*, Williams & Strohm, LLC; Two Miranova Place,
Suite 380, Columbus, OH 43215

Courtney L. Hanna, *Counsel for Defendant*, Joseph & Joseph Co, LPA; 155 W. Main
Street, Suite 200, Columbus, OH 43215





WILLIAMS & STROHM, LLC
ATTORNEYS AT LAW

**EXHIBIT K**

**Robin L. Strohm**
r.strohm@wslawllc.com

**Nicholas R. Barnes**
n.barnes@wslawllc.com

Two Miranova Place, Suite 380 • Columbus, Ohio 43215-7047
Tel: 614-228-0207 • Fax: 614-228-6984 • www.williams-strohm.com

**Brad J. Terman**
b.terman@wslawllc.com

**Jesse M. Kanitz**
j.kanitz@wslawllc.com

**Charles T. Williams**
Of Counsel
c.williams@wslawllc.com

June 25, 2020

*Via Regular U.S. Mail*

Joseph Suarez
7840 Overland Trail
Delaware, Ohio 43015

RE:     **North Orange Homeowners' Association, Inc.**
        **Notice of Special Assessment and Right to Hearing**

Dear Mr. Suarez:

This notice is being provided directly to you for the sole purpose of compliance with the requirement of R.C. 5312.11(D)(5). I am aware that you are presently represented by counsel, and a copy of this notice is being provided to your attorney as well. Our office will not further communicate directly with you regarding the matter.

As you are aware, I am an attorney for North Orange Homeowners' Association, Inc. ("Association"). On June 23, 2020, the Delaware County Court of Common Pleas (the "Court") awarded the Association an additional $12,855.00 in attorney fees in its pending enforcement case against you (the "June 23 Entry"). Pursuant to the June 23 Entry, the Association has now been awarded attorney fees and costs in the total amount of $23,445.00 (the "Enforcement Costs"). The Association is hereby providing you notice that, pursuant to R.C. 5312.11 and the Association's Declaration, the Enforcement Costs will be levied against you and your lot located at 7840 Overland Trail.

Please be advised that the Association intends to levy an assessment against you in the amount of $23,445.00. You have an opportunity to have a hearing before the Board to contest the assessment. To request a hearing, you, or your counsel, must hand-deliver, mail, or e-mail a request to the Board, c/o Jesse M. Kanitz, within ten (10) days from the date that you receive this notice. If you fail to request a hearing within ten (10) days from the date you receive this notice, the Enforcement Costs will be applied to your account and become immediately due. In the event you request a hearing in a timely manner, the Association will delay imposing the Enforcement Costs until such time as it conducts the hearing and provides you with a notice of its decision.

Best regards,

*Kanitz*

Jesse M. Kanitz

cc:     Courtney Hanna, Esq. (via email – courtneyhanna@josephandjoseph.com)



EXHIBIT L

WILLIAMS & STROHM, LLC

Two Miranova Place, Suite 380  •  Columbus, Ohio 43215-7047
Tel: 614-228-0207  •  Fax: 614-228-6984  •  www.williams-strohm.com

**Robin L. Strohm**
r.strohm@wslawllc.com

**Nicholas R. Barnes**
n.barnes@wslawllc.com

**Brad J. Terman**
b.terman@wslawllc.com

**Jesse M. Kanitz**
j.kanitz@wslawllc.com

**Charles T. Williams**
Of Counsel
c.williams@wslawllc.com

August 20, 2020

***Via Regular U.S. Mail and Email***
***(courtneyhanna@josephjoseph.com)***

Mr. Joseph Suarez
c/o Courtney L. Hanna, Esq.
Joseph & Joseph Co., LPA
The Waterford
155 W. Main Street, Suite 200
Columbus, Ohio 43215

RE:   **Joseph Suarez**
      **Notice of Assessment and Compliance Demand**

Dear Mr. Suarez:

        As you are aware, this office represents North Orange Homeowners' Association, Inc. ("Association"). Pursuant to the June 23, 2020, entry of the Delaware County Court of Common Pleas, the Association was awarded damages against you in the amount of $23,445.00 (the "Enforcement Costs"). On June 25, 2020, the Association provided you with notice of its intent to levy the Enforcement Costs against you and your lot located at 7840 Overland Trial (the "June 25th letter"). The Enforcement Costs remain unpaid and have been added to your account as set forth in the June 25th letter.  As of August 20, 2020, your account balance is 23,297.00. For your review, I have enclosed an updated copy of your account ledger with the Association.

        Please mail payment in full, via certified funds or money order, to the North Orange Homeowners' Association, Inc., c/o Jesse M. Kanitz, Esq., Williams and Strohm, LLC, Two Miranova Place, Suite 380, Columbus, Ohio 43215, on or before August 31, 2020. Should payment not be made as requested herein—subject to your rights sets forth in the notice included on the second page of this letter—this office may proceed to take additional, appropriate legal action to collect the amounts owed. <u>Regardless of whether you pay the amounts demanded on or before August 31, 2020 or any action that may be taken by the Association after that date, you retain the right to dispute the debt as set forth in the notice provided below for a time period of thirty (30) days from the date you received this letter.</u>

        Further, the Board hereby demands that you take immediate action to bring your lot into compliance with the plain terms of the February 11, 2019 Court Order (the "February 11th

Order") on or before September 4, 2020. Specifically, the February 11th Order requires the removal of all wall lights, spot lights, and the tree boxes and prohibited you from performing any other exterior modifications without first receiving the Association's explicit approval. Should you fail to remove all unauthorized improvements from your lot on or before September 4, 2020, the Association will promptly file a motion seeking to hold you in contempt of court.

This firm is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Best regards,

Jesse M. Kanitz

Enclosure

**Notice**: Unless you dispute the validity of this debt or any portion thereof within thirty (30) days after your receipt of this letter, then we will assume that the debt is valid. **If you dispute the validity of this debt, or any portion thereof, and if you so advise us within thirty (30) days of your receipt of this letter, then we will cease all collection action, including any action referenced in the body of this letter, until we obtain verification of this debt and mail a copy of such verification to you.** Additionally, if the current creditor is different from your original creditor and you request within thirty (30) days of your receipt of this letter, we will provide the name and address of the original creditor.

# North Orange Homeowners' Association

PO Box 630

Worthington, OH 43085

Joseph W Suarez
7840 Overland Trail
Delaware, OH  43015

**Property Address:**  7840 Overland Trail
**Account #:**       19459

| Code | Date | Amount | Balance | Check# | Memo |
|------|------|--------|---------|--------|------|
| Assessment | 1/1/2019 | 170.00 | 170.00 | | Assessment |
| Payment | 3/5/2019 | -170.00 | 0.00 | 564 | AAFSLB-030519.TXT |
| Assessment | 1/1/2020 | 170.00 | 170.00 | | Assessment |
| Payment | 2/18/2020 | -170.00 | 0.00 | 576 | AAFSLB-021820.TXT |
| Payment | 5/11/2020 | -148.00 | -148.00 | 72878 | Natalie Fravel, County of Delaware, William |
| Legal Fees | 8/20/2020 | 23,445.00 | 23,297.00 | | Williams & Strohm |

| Current | 30 - 59 Days | 60 - 89 Days | >90 Days | Balance: | 23,297.00 |
|---------|--------------|--------------|----------|----------|-----------|
| 23,445.00 | 0.00 | 0.00 | -148.00 | | |

Capital Property Solutions | PO Box 630 | Worthington, OH 43085 | 614-481-4411
**Make check payable to: North Orange Homeowners' Association**

8/20/2020                                                                                                    Page 1 of 1

EXHIBIT M 

**Jesse Kanitz**

| | |
|---|---|
| **From:** | JOEY SUAREZ <joesuarez28@hotmail.com> |
| **Sent:** | Monday, February 3, 2020 8:34 PM |
| **To:** | Jesse Kanitz; Nicholas Barnes; Deborah McNinch; Courtney Hanna; Admin; NOHOAohio@gmail.com |
| **Subject:** | Lighting |
| **Attachments:** | Spot Light Layout NEW.docx; NEW Wall Lighting layout Re Done.docx; Bassis Of Approval and Building Actions.png; Spot Light Examples.pptx |

Attached is new updated lighting diagrams and photos of other homes in North Orange taking on 02/03/2020 all address can be provided.

Offer:

1. Add spot lights around home 20W or less to keep brightness down.
2. Keep Tree spot lights 2 per tree X8 Trees
3. Remove mailbox spot lights
4. $4,000 worth of wall led down lighting removed other then front walkway to front door for safety of my guest and driveway so walls don't get hit by cars at night.
5. Tree boxes lowered from current height of 15 inches down to 6 inches. This is almost ground level.

This offer is open from 02/04/2020-02/18/2020 if board members, do not agree on all items (or meet in the middle with me)  dues of $24,300 will be turned over to my CH13 attorney to be added into my plain. If all items are agreed on including the wall height that was in the  December offer then a check will be made out and all attorney fees will be paid in full within 10days of contract. If board would like to have a meeting with me to discuss lighting I will be open to that as well. THIS IS MY FINAL OFFER

Thank you

Joey Suarez

EXHIBIT N

**Jesse Kanitz**

| | |
|---|---|
| **From:** | JOEY SUAREZ <joesuarez28@hotmail.com> |
| **Sent:** | Wednesday, August 26, 2020 1:39 PM |
| **To:** | Jesse Kanitz; Admin; NOHOAohio@gmail.com |
| **Subject:** | HOA Matters |

Dear Jesse and the board

Because my attorney won't email you and tell you what my issue is i will email you all directly. This is my issue. Im asking in return of the 3 iteams you want me to remove.. (you know iteams you allowed others to have and still are installing.) I will follow the court order for the 3 iteams but I'm asking in return the 3 applications I turned in on 8/24/2020 are approved at time of payment. Why do I ask for this? Well in other words I dont trust ANY of you to approve the applications after I remove the 3 iteams and pay you in full. Why should I? You lied in Affidavits to the courts, you lie to neighbors about what is really going on? Here are your choices.

A. Agree to the above terms and everyone walks away from this selective enforcement lawsuit you put me through for 3 years. (And yes board you can still have a big block party and tell everyone you won!)

B. Not agree and not get paid and me and my bankruptcy attorney re file my CH13 and you get back about 5% what I o you. Also I told him all your threats of trying to get my bankruptcy dismissed and he laughed and said its not that easy especially when I have made almost 4 years worth of perfect payments into my plan.

C. Not agree and take me to contempt of court and please be ready to explain to the judge the following..

1. Why did you lie in Affidavits and say i had water fountains on my property and spot lights on my house?

2. Why are you allowing others to have and keep getting what you sued me for?

The judge will be asking me why I did not follow court order and I have every right to tell him what is going on and what kind of BS release you tried to get me to sign!

FYI my court order does say "remove iteams until a approval is made" so the iteams im removing i can still ask for down the road. Not at this time but maybe next year.

Conclusion:
            Let's get this done this week and I will start removing the iteams and i will pay you immediately after getting a Yes on my 3 applications.

P.S You already said in EMAILS during the settlement talk that my patio, wall caps and landscaping was APPROVED.

Thank you

Joey Suarez

1

EXHIBIT 🍎    : 1 of 1

## EXTERIOR MODIFICATION APPLICATION

Name: Joey Suarez                             Date Submitted: 5/12/2020

Unit Address: 7840 Overland Trl            Phone: 740-815-5453

Description of Modification: Wall Caps on Retaining walls 2X8X16

Please draw or attach a plot plan showing the exact location with respect to the property.

1. To install wall caps on all Retainy walls after
   Lowering is completed.

2. Wall caps will cover up the Glue left behind
   from the lowering of the walls.

4. Size 2X8X16

Please provide details or documents about the product you plan to use.

Materials and Colors: Concrete / Pewter Grey

Modification to Begin On: May 2020          To Be Completed By: May 2020

The owner(s) or their designees (contractor) must comply with the following:
  1)  The specifications as approved by the Board of Directors.
  2)  Applicable building regulations, ordinances, etc. including a final inspection.
  3)  Contractor's one-year warranty on materials and labor if applicable.
  4)  Repair of any damage to the Common or Limited Common Elements or other Units.

All approved projects shall start within one year of the approval. Once started, a project must be completed within 90 days. Only owners current on dues payments will receive approval. Any project must be maintained to the manufactures specifications.

APPROVED ☐  DISAPPROVED ☒ BY: _M. Dillon_ per Board  DATE: 5/13/2020
              denied until such time as he has complied with the court order and paid all amounts owed.

PLEASE SUBMIT FORM TO:
Capital Property Solutions
P.O. Box 630
Worthington, Ohio 43085
Fax: (614) 443-3798
Questions? Call (614) 481-4411



**WALL LAYOUT**

PATIO

**SUAREZ HOME**

PORCH

**DRIVEWAY**

**Color Codes:** ━━━━━━━ Wall cap locations after lowering is completed to cover up glue left behind from lowering the walls. Also, to keep the walls from separating again like they did in the past from not being "locked" together.

# WALL CAPS



# WALL CAPS



# WALL CAPS





## map



Delaware County Auditor
George Kaitsa

Information contained within this map may be used to generally locate, identify and inventory land parcels within Delaware County.
Delaware County cannot warrant or guarantee the information contained herein, including, but not limited to its accuracy
or completeness. The map parcel lines shown are approximate and this information cannot be constructed or used as a "legal description" of a parcel.
Flood Plain information is obtained from FEMA and is administered by the Delaware County Building Department (740-833-2201).
Please report any errors or omissions to the Delaware County Auditor's office at delcogis@co.delaware.oh.us.
Prepared by: Delaware County Auditor's GIS Office



**EXHIBIT P**

## EXTERIOR MODIFICATION APPLICATION

Name: _Joey Suarez_                    Date Submitted: _5/12/2020_

Unit Address: _7840 Overland Trl_                Phone: _740-815-5453_

Description of Modification: _New 19x30 Stamp Concrete Patio_

Please draw or attach a plot plan showing the exact location with respect to the property.

|  |
|--|
|  |

Please provide details or documents about the product you plan to use.

Materials and Colors: _Stamp Concrete / Grey in Color_

Modification to Begin On: _June 2020_          To Be Completed By: _June 2020_

The owner(s) or their designees (contractor) must comply with the following:
1) The specifications as approved by the Board of Directors.
2) Applicable building regulations, ordinances, etc. including a final inspection.
3) Contractor's one-year warranty on materials and labor if applicable.
4) Repair of any damage to the Common or Limited Common Elements or other Units.

All approved projects shall start within one year of the approval. Once started, a project must be completed within 90 days. Only owners current on dues payments will receive approval. Any project must be maintained to the manufactures specifications.

APPROVED ☐   DISAPPROVED ☒ BY: _M. Dillon_  per board   DATE: _5/13/2020_
            denied until such time as he has complied with the court order and paid all amounts owed.

PLEASE SUBMIT FORM TO:
Capital Property Solutions
P.O. Box 630
Worthington, Ohio 43085
Fax: (614) 443-3798
Questions? Call (614) 481-4411

# STAMP DESIGN AND COLOR OF PATIO





─── Current 6X6 wood retaining wall installed by builder 3 FT Tall Flat black.

 Current Privacy Trees Emerald Green.



## map



**Delaware County Auditor**
**George Kaitsa**

Information contained within this map may be used to generally locate, identify and inventory land parcels within Delaware County.
Delaware County cannot warrant or guarantee the information contained herein, including, but not limited to its accuracy
or completeness. The map parcel lines shown are approximate and this information cannot be constructed or used as a "legal description" of a parcel.
Flood Plain information is obtained from FEMA and is administered by the Delaware County Building Department (740-833-2201).
Please report any errors or omissions to the Delaware County Auditor's office at delcogis@co.delaware.oh.us.
Prepared by: Delaware County Auditor's GIS Office



Page 1 of 1

EXHIBIT Q 

## EXTERIOR MODIFICATION APPLICATION

Name: Joey Suarez                          Date Submitted: 5/12/2020

Unit Address: 7840 Overland Trl            Phone: 740-815-5453

Description of Modification: LandScape Install / plants

Please draw or attach a plot plan showing the exact location with respect to the property.

See Attachments

Please provide details or documents about the product you plan to use.

Materials and Colors: All Kinds

Modification to Begin On: June 2020        To Be Completed By: June 2020

The owner(s) or their designees (contractor) must comply with the following:
1) The specifications as approved by the Board of Directors.
2) Applicable building regulations, ordinances, etc. including a final inspection.
3) Contractor's one-year warranty on materials and labor if applicable.
4) Repair of any damage to the Common or Limited Common Elements or other Units.

All approved projects shall start within one year of the approval. Once started, a project must be completed within 90 days. Only owners current on dues payments will receive approval. Any project must be maintained to the manufactures specifications.

APPROVED ☐    DISAPPROVED ✗ BY U. Dillon    per Board  DATE: 5/13/2020

denied until such time as he has complied with the court order and paid all amounts owed.

PLEASE SUBMIT FORM TO:
Capital Property Solutions
P.O. Box 630
Worthington, Ohio 43085
Fax: (614) 443-3798
Questions? Call (614) 481-4411

Starting on the left and going around kind of....some plants are in
several places.
10 Taxus densiformis 18-24" because they are evergreen and you need
something evergreen by the house and to hide the drop off of the wall.

19 Hibiscus 'Luna Red' #2 or something like it (red or pink flowers).
These perennials have interesting foliage and flowers, low maintenance
and very showy.  Used a couple different places in the landscape to tie
it together.

4 flats of Ajuga 'Bronze Beauty' to install under existing Pear tree.
It's a nice ground cover, will take a bit to fully cover area, very low
maintenance.

10 Sedum 'Autumn Joy' #1 interesting foliage and flower, coordinates
well with Heuchera and Hibiscus, very low maintenance.

26 Heuchera 'Caramel' #1 beautiful perennial that loves the sun, looks
great with Hibiscus, Sedum and perennials by the pond: Echinacea and
Asiatic Lilies, very low maintenance.

90 Boxwood 'Green Velvet' 12-15" #3, installed 2 feet on center, my
favorite Boxwood to line the outside beds.  Moderate amount of
maintenance to keep shaped.

2 Boxwood pyramidal 18-24" #5, they are boxwoods in a pyramidal shape.
It's a nice kind of bookend on a line of Boxwoods and it will accent the
columns on the porch.  Can maintain at any height, moderate amount of
maintenance to keep shaped.

1 Dappled Willow on a standard (stick) Salix integrate 'Hakuro Nishiki'
#15. This is an accent plant for the corner by the pond.  It has
interesting foliage and is on a standard (stick).  You need something of
height for the corner.  Moderate maintenance

10 Catmint 'Walker's Low' #1 to sprinkle around the pond and possibly on
the other side of the front door to tie the two landscapes together with
similar plants, long flowering.

6 Feather Reed Grass #2 to give a backdrop to the pond.  Feather Reed is
the most elegant of ornamental grasses, doesn't really spread, it stays
nice and upright.  Low maintenance

6 Juniper p. 'Nana' #3 a rug juniper to transition between the pond and the sidewalk, very low maintenance

10 Coneflower red or orange #1 for pops of color around the pond and by the front door.  Again it coordinates well with the other perennials and ties both sides of the landscape together.

10 Asiatic Lilies #2 pops of color, coordinates with other colors, ties landscape together.

2 Junipers 5-6' to flank the driveway, low - moderate maintenance.

11 Weigela Spilled Wine #3 has interesting foliage, matures at 3-4', can keep any height to stay below windows, has pink/red flowers, stays in our color scheme.

42 Variegated Liriope #1 ornamental grass 9-12" great color, will go around upright Junipers as a nice accent, goes well with Boxwoods and one bed along the driveway is 4' wide so need something else in the bed with the Boxwoods that doesn't compete with the Boxwoods and look great together.

7 Drift Roses #3 red, low growing ground cover roses, can take the heat in the driveway bed (with irrigation), a lot of color most of the year.

3 Ferns #1 to hide the utilities in the bed in the rear, looks good with Hosta

11 Hosta #1 nice perennial for shady bed that will stay low enough not to block window

5 Hydrangea Annabelle #3 great shrub for this area, will take 2-3 years to fill the space, low maintenance



SEDUM

BOXWOOD





**map**

Information contained within this map may be used to generally locate, identify and inventory land parcels within Delaware County.
Delaware County cannot warrant or guarantee the information contained herein, including, but not limited to its accuracy
or completeness. The map parcel lines shown are approximate and this information cannot be constructed or used as a "legal description" of a parcel.
Flood Plain information is obtained from FEMA and is administered by the Delaware County Building Department (740-833-2201).
Please report any errors or omissions to the Delaware County Auditor's office at delcogis@co.delaware.oh.us.
Prepared by: Delaware County Auditor's GIS Office

Delaware County Auditor
George Kaitsa



EXHIBIT R



EXHIBIT S

**Joey Suarez**
North Orange • 1 min ago



Welcome To North Orange
Where The HOA Board
Members Use Selective
Enforcement Against
Homeowners Like Myself
And Blow $30,000 Of Your
HOA Money To Do So!

Sorry For The Eyesore...
The HOA Board Members
And CPS Wont Allow Me To
Finish My Landscaping Or
Plant Anything Due To
Selective Enforcement. They
Would Rather You Look At An
Unfinished Project.

**HOA Board Just Gave Up Your Money!** Today the HOA
Board members told my attorney they will not agree to
my settlement that was supposed to be signed today
and I cant finish my exterior of my home.. because of
the following

A. I wont agree to a "Release" where I can never sue
them for selective enforcement and other items down
the road.

B. I still want my tree boxes after 21 other homes have
them and 6 homes have just installed them in the past 2
months.

I was going to pay the HOA all of their money back so I



A. I wont agree to a "Release" where I can never sue them for selective enforcement and other items down the road.

B. I still want my tree boxes after 21 other homes have them and 6 homes have just installed them in the past 2 months.

I was going to pay the HOA all of their money back so I could be allowed to install plants, patio, and wall caps "like other homes already have in the community". Now they have just lost their attorney money and all they can do is apply a lein on my house (and spend more of our HOA money to do so). (If i allow it of course) all they got to do is sign the settlement and let me have what others have in the community, and this all goes away and the signs come down.. 🙋‍♂️

P.S If they come onto my property (or anyone) to try to remove them Delaware County Sheriff said they will be charged with criminal trespassing! I have 16 cameras i will be watching! 😊

Posted in **General** to **37 neighborhoods**

😊 **Thank**    🗨 **Comment**

## North Orange Homeowners' Association

PO Box 630

Worthington, OH 43085



Joseph W Suarez
7840 Overland Trail
Delaware, OH  43015

**Property Address:**  7840 Overland Trail

**Account #:**  19459

| Code | Date | Amount | Balance | Check# | Memo |
|------|------|--------|---------|--------|------|
| Assessment | 1/1/2019 | 170.00 | 170.00 | | Assessment |
| Payment | 3/5/2019 | -170.00 | 0.00 | 564 | AAFSLB-030519.TXT |
| Assessment | 1/1/2020 | 170.00 | 170.00 | | Assessment |
| Payment | 2/18/2020 | -170.00 | 0.00 | 576 | AAFSLB-021820.TXT |
| Payment | 5/11/2020 | -148.00 | -148.00 | 72878 | Natalie Fravel, County of Delaware, William |
| Legal Fees | 8/20/2020 | 23,445.00 | 23,297.00 | | Williams & Strohm |

| Current | 30 - 59 Days | 60 - 89 Days | >90 Days | Balance: | 23,297.00 |
|---------|--------------|--------------|----------|----------|-----------|
| 23,445.00 | 0.00 | 0.00 | -148.00 | | |